# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**Opinion Number: 2022-NMCA-001**

**Filing Date: May 24, 2021**

**No. A-1-CA-37395**

**FEDERAL NATIONAL MORTGAGE ASSOCIATION ("FANNIE MAE"), a corporation organized and existing under the laws of the United States of America,**

      Plaintiff-Appellee,

v.

**BERNIE B. TRISSELL and MICHAEL D. TRISSELL,**

      Defendants-Appellants.

**APPEAL FROM THE DISTRICT COURT OF SANDOVAL COUNTY**
**John F. Davis, District Judge**

Certiorari Denied, December 22, 2021, No. S-1-SC-38867. Released for Publication February 22, 2022.

McCarthy & Holthus, LLP
Joshua T. Chappell
Albuquerque, NM

Akerman LLP
Michael J. McKleroy, Jr.
Dallas, TX

for Appellee

Durham, Pittard & Spalding, LLP
Caren I. Friedman
Santa Fe, NM

for Appellants

## OPINION

**IVES, Judge.**

**{1}** In this foreclosure action, Defendants Bernie and Michael Trissell appeal the district court's entry of summary judgment for Plaintiff Federal National Mortgage Association (Fannie Mae), arguing that (1) Plaintiff lacked standing, (2) the district court erred by entering summary judgment against Defendants on their affirmative defenses, and (3) the district court should have allowed Defendants to conduct additional discovery before ruling on Plaintiff's summary judgment motion. Unpersuaded, we affirm.

**{2}** However, we acknowledge that precedents from our Supreme Court and this Court are unclear on a pivotal issue in this case: the allocation of summary judgment burdens where the plaintiff is the moving party. We therefore issue this precedential opinion to explain our understanding that, in New Mexico, once a plaintiff-movant has made a prima facie case on its claim alone, a defendant resisting summary judgment with an affirmative defense has the burden of demonstrating a genuine issue of material fact as to the defense. Applying that rule to this case, we hold that Defendants failed to carry their burden and thus failed to overcome Plaintiff's prima facie showing of entitlement to judgment on its claim.

## BACKGROUND

**{3}** In 2008, Defendants executed a promissory note in favor of Lewallen Mortgage, Inc., secured by a mortgage that Defendants executed that same day. By August 2010, a different mortgage company, SunTrust Mortgage, Inc., was servicing Defendants' loan, and Defendants contacted SunTrust to discuss a recent increase in the amount of their monthly loan payment. Defendants later failed to remit the installment that was due on January 1, 2011, and asked SunTrust to modify the loan. SunTrust declined and, in February 2011, notified Defendants that their loan was in default. After it had been assigned the mortgage, SunTrust brought a foreclosure action against Defendants. SunTrust eventually assigned the mortgage to Plaintiff, and Plaintiff was substituted for SunTrust as the plaintiff. The original foreclosure action was dismissed without prejudice for lack of prosecution in November 2015.

**{4}** Plaintiff initiated the present foreclosure action in March 2016. Plaintiff attached to its complaint a copy of the promissory note, which SunTrust had indorsed in blank, along with an allonge showing a special indorsement from Lewallen to Suntrust. Defendants raised thirteen affirmative defenses in their answer. Plaintiff moved for summary judgment on the claim in its complaint and on Defendants' affirmative defenses. In their response, Defendants, while elaborating upon only some of their affirmative defenses, argued that summary judgment was improper because Plaintiff had failed to make a prima facie showing of entitlement to summary judgment on those defenses. After Plaintiff filed its reply, the district court allowed both parties to file sur-replies. Following a hearing, the district court granted the motion and entered judgment for Plaintiff. Defendants appeal.

## DISCUSSION

## I.   Standard of Review

**{5}**    "We review the district court's grant of summary judgment de novo." *HSBC Bank USA v. Wiles*, 2020-NMCA-035, ¶ 8, 468 P.3d 922, *cert. denied*, 2020-NMCERT-___ (No. S-1-SC-38290, June 8, 2020). Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Rule 1-056(C) NMRA. We "review the whole record in the light most favorable to the party opposing summary judgment to determine if there is any evidence that places a genuine issue of material fact in dispute." *Wiles*, 2020-NMCA-035, ¶ 8 (internal quotation marks and citation omitted).

**{6}**    A summary judgment movant bears the "initial burden of establishing a prima facie case for summary judgment." *Romero v. Philip Morris Inc.*, 2010-NMSC-035, ¶ 10, 148 N.M. 713, 242 P.3d 280. A movant establishes a prima facie case when the motion is supported by "such evidence as is sufficient in law to raise a presumption of fact or establish the fact in question unless rebutted." *Id.* (internal quotation marks and citation omitted). "[U]ntil a party has made a prima facie showing that it is entitled to summary judgment, the nonmoving party is not required to make any showing with respect to factual issues." *Knapp v. Fraternal Order of Eagles*, 1987-NMCA-064, ¶ 9, 106 N.M. 11, 738 P.2d 129. When "the facts are not in dispute," a court's only task is to determine the "legal effect of [those] facts." *Koenig v. Perez*, 1986-NMSC-066, ¶ 10, 104 N.M. 664, 726 P.2d 341.

## II.   The District Court Did Not Err by Granting Plaintiff's Motion for Summary Judgment

**{7}**    We affirm the district court's entry of summary judgment, holding that (A) Plaintiff had standing; (B) Defendants bore the burden of showing that a genuine dispute of material fact on their affirmative defenses precluded summary judgment and their contentions that they met this burden do not merit review; and (C) Defendants failed to preserve their argument that the district court erred by not allowing Defendants to conduct additional discovery before ruling on Plaintiff's summary judgment motion.

### A.   Plaintiff Had Standing

**{8}**    Standing to foreclose depends on whether the foreclosing party can "demonstrate that it had the right to enforce the note and the right to foreclose the mortgage at the time the foreclosure suit was filed." *PNC Mortg. v. Romero*, 2016-NMCA-064, ¶ 19, 377 P.3d 461 (alteration, internal quotation marks, and citation omitted). To establish its right to enforce the promissory note underlying the mortgage, a third party seeking foreclosure must prove that, "at the time of filing," *Deutsche Bank Nat'l Tr. Co. v. Johnston*, 2016-NMSC-013, ¶ 27, 369 P.3d 1046 (emphasis omitted), it had "both physical possession *and* the right to enforcement through either a proper indorsement or a transfer by negotiation." *Bank of N.Y. v. Romero*, 2014-NMSC-007, ¶ 21, 320 P.3d 1. The "holder" of the note has a right to enforce it and foreclose the mortgage. *See* NMSA 1978, § 55-3-301 (1992) (providing that the "holder of [an] instrument" is a person entitled to enforce

it); *Johnston*, 2016-NMSC-013, ¶ 14 (explaining that the statutory "definition of who may enforce a note" guides the determination of whether a particular plaintiff has established "an injury in fact sufficient to confer standing" to foreclose); *Wiles*, 2020-NMCA-035, ¶¶ 12-13 (affirming "the long-standing principle that 'the mortgage follows the note' "). The Uniform Commercial Code defines "holder" as "the person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession[.]" NMSA 1978, § 55-1-201(b)(21)(A) (2005). Accordingly, a foreclosing party may establish that it is the holder of a note—and therefore entitled to enforce it—by attaching to the initial complaint a note that is indorsed to the foreclosing party or in blank. *See Johnston*, 2016-NMSC-013, ¶ 23 (explaining that a foreclosing party may establish its right to enforce the note by "attaching a note containing an undated indorsement to the initial complaint").

**{9}** Here, Plaintiff demonstrated that it had standing to foreclose by attaching a note containing a blank indorsement to its initial complaint. *See generally Bank of N.Y.*, 2014-NMSC-007, ¶ 24 ("A blank indorsement, as its name suggests, does not identify a person to whom the instrument is payable but instead makes it payable to anyone who holds it as bearer paper."). Although Defendants do not contest that the note attached to the initial complaint was indorsed in blank, Defendants argue that Plaintiff failed to prove its right to enforce the note because Plaintiff did not demonstrate a transfer of the note or that it was the holder. *Compare* § 55-3-301 (providing that the "holder of [an] instrument" is entitled to enforce it), *with id.* (providing that "a nonholder in possession of the instrument who has the rights of a holder" is entitled to enforce the instrument), *and* NMSA 1978, § 55-3-203 cmt. 2 (1992) (explaining that a "transferee is not a holder" when "the transferor did not indorse" and, in that situation, the transferee must demonstrate that it "obtained the rights of the transferor" through proof of "the transaction through which the transferee acquired" the unindorsed instrument). However, by attaching a note with a blank indorsement to its initial complaint, Plaintiff did establish itself as the holder at the time the complaint was filed. *See Johnston*, 2016-NMSC-013, ¶ 23. Defendants argue further that Plaintiff failed to present sufficient evidence that it possessed the original note. Although Plaintiff attempted to prove its possession of the note in various ways, attaching a copy of the original note to the initial complaint was sufficient. *Compare Wiles*, 2020-NMCA-035, ¶ 10 (holding that the plaintiff "established a prima facie case of standing" when it "attached a copy of the [n]ote indorsed in blank to its complaint"), *with Los Alamos Nat'l Bank v. Velasquez*, 2019-NMCA-040, ¶ 16, 446 P.3d 1220 (analyzing whether there was evidence "to establish that [the plaintiff] had possession of the note at the time it filed the complaint" because the note "was neither attached to the initial complaint nor dated"), *cert. denied*, 2019-NMCERT-___ (No. S-1-SC-37688, Aug. 5, 2019). Defendants argue that this case is similar to others where there was insufficient evidence to demonstrate that the plaintiff had a right to enforce the note. However, this case is unlike the cases on which Defendants rely because here Plaintiff attached a note containing a blank indorsement to its initial complaint. *See PNC Mortg.*, 2016-NMCA-064, ¶ 25; *Johnston*, 2016-NMSC-013, ¶ 25; *Bank of N.Y.*, 2014-NMSC-007, ¶¶ 10, 23. Because Defendants did not present any evidence to rebut Plaintiff's prima facie case of standing, *cf. Wiles*, 2020-NMCA-035, ¶¶ 4-5 (explaining that the defendant used discovery to inspect his loan file at the office of the plaintiff's counsel and uncover evidence to support his position,

though unmeritorious, that there was a genuine issue of material fact regarding the plaintiff's standing to foreclose), we hold that Plaintiff had standing to enforce the note and foreclose the mortgage.

**B.      Defendants Have Not Shown That the District Court Erred by Concluding That Defendants Failed to Carry Their Burden to Avoid Summary Judgment on Their Affirmative Defenses**

**{10}**    Our holding that Plaintiff had standing resolves the only disputed issue regarding the adequacy of Plaintiff's prima facie case on its foreclosure claim. But Defendants argue that, regardless of whether Plaintiff established standing, Plaintiff failed to shoulder an additional burden regarding Defendants' affirmative defenses and therefore Plaintiff never established a prima facie case for summary judgment. Specifically, Defendants contend that, under *Fidelity National Bank v. Tommy L. Goff, Inc.*, (*Goff*) 1978-NMSC-074, ¶¶ 5, 8-9, 92 N.M. 106, 583 P.2d 470, to make a prima facie case for summary judgment, Plaintiff was required to show that there was no genuine issue of material fact as to Defendants' affirmative defenses. If Defendants are correct, then the next step in our analysis is to determine whether Plaintiff carried that burden. But if Defendants are incorrect, then Plaintiff successfully shifted the burden to Defendants when it made a prima facie case for judgment on its claim, and the next (and final) step in our analysis is to determine whether Defendants showed that a genuine issue of material fact as to any of their affirmative defenses precluded summary judgment.

**{11}**    In *Goff*, our Supreme Court held that, even though the defendant had provided no "factual amplification" of the twelve affirmative defenses asserted in his answer, the burden was on the plaintiff to contravene each of the affirmative defenses in its motion for summary judgment. *Id.* ¶¶ 2-5, 9, 11-12. With this holding, the Court overruled *Kassel v. Anderson*, 1973-NMCA-028, 84 N.M. 697, 507 P.2d 444, in which this Court held that the "bare contention" of affirmative defenses in the defendant's amended answer were "insufficient to defeat" the plaintiffs' summary judgment motion because the plaintiffs had made the requisite prima facie showing. *Goff*, 1978-NMSC-074, ¶ 10. In contrast, the *Goff* Court reasoned that the defendant's "averment of affirmative defenses" required the plaintiff "to produce the necessary affidavits or other material to expose [the] affirmative defenses as unmerited." *Id.* ¶ 9. Thus, under *Goff*, to overcome unclear or conclusory affirmative defenses and obtain summary judgment on their claims, plaintiff-movants must avail themselves of "pre[]trial discovery mechanisms" to demonstrate that those defenses are factually or legally deficient. *Id.* ¶¶ 9, 11.

**{12}**    However, we are unable to reconcile that proposition with two more recent precedents from our Supreme Court, *Mayfield Smithson Enterprises v. Com-Quip, Inc.*, 1995-NMSC-034, 120 N.M. 9, 896 P.2d 1156, and *Western Bank of Santa Fe v. Biava*, 1990-NMSC-023, 109 N.M. 550, 787 P.2d 830, and one precedent from this Court, *Galef v. Buena Vista Dairy*, 1994-NMCA-068, 117 N.M. 701, 875 P.2d 1132. Although the opinions in those cases are not completely clear, we think that their analyses are best read to put the onus on the defendant opposing summary judgment with an affirmative

defense to present factual support for the defense after the plaintiff has made a prima facie case on its claim alone.

**{13}** In *Mayfield Smithson Enterprises*, our Supreme Court held that the district court had properly entered summary judgment for the plaintiff in a quiet title action. 1995-NMSC-034, ¶ 26. Although the Court acknowledged the *Goff* holding, *see Mayfield Smithson Enters.*, 1995-NMSC-034 ¶ 9, its reasoning departed from that holding. The Court observed that the defendant had asserted as an affirmative defense that the plaintiff was equitably estopped from denying the existence of the defendant's interest in the property but that the defendant failed to "indicate to the trial court [the] fact or facts" supporting "each element of equitable estoppel[.]" *Id.* ¶¶ 7, 10. This led the Court to conclude that the plaintiff had "made a prima facie showing of entitlement to summary judgment" that went unrebutted by the defendant's "vague allegations" in the record. *Id.* ¶ 10.

**{14}** Our Supreme Court also departed from *Goff* in *Biava*. There, the Court stated that the plaintiff-movant was "correct" in asserting that, once it "adduced [the defendant's] answer admitting liability on [a promissory] note, . . . the burden . . . [of] com[ing] forward with sufficient evidentiary matters to establish a genuine issue of fact" on the affirmative defense of accord and satisfaction "rested on [the defendant.]"[1] *Biava*, 1990-NMSC-023, ¶ 11. Having concluded that the plaintiff had made a prima facie case for summary judgment, the Court proceeded to analyze whether the defendant had introduced sufficient evidence to overcome the plaintiff's prima facie case, ultimately reversing the entry of summary judgment because the defendant had introduced an affidavit and deposition testimony that "raise[d] a genuine issue of fact as to" "the accord-and-satisfaction defense." *Id.* ¶¶ 12-16.

**{15}** This Court took the same approach in *Galef*, reasoning that, once the plaintiff "moved for summary judgment on his claim" for a charging order, "[i]t was incumbent on [the d]efendants to make a factual showing regarding the elements of [their affirmative defenses.]" 1994-NMCA-068, ¶¶ 1, 12-13. Because the record before the Court indicated that the defendants had not met that burden, the Court affirmed the entry of summary judgment for the plaintiff. *Id.* ¶¶ 10-14.

**{16}** We read the opinions in *Mayfield Smithson Enterprises*, *Biava*, and *Galef* to place the burden with respect to affirmative defenses on the defense, but we acknowledge that

---

[1] In his specially concurring opinion in *Biava*, Justice Ransom took the position, consistent with *Goff*—but without asserting that the majority's approach was inconsistent with *Goff*—that until a plaintiff has made a prima facie showing that there is no genuine issue of material fact as to an affirmative defense, it is not incumbent on the defendant to establish the facts supporting the defense. *Biava*, 1990-NMSC-023, ¶¶ 20-21 (Ransom, J., specially concurring); *see also Transamerica Ins. Co. v. Sydow*, 1988-NMSC-029, ¶ 4, 107 N.M. 104, 753 P.2d 350 (holding that the plaintiff-movant had met its burden of rebutting the defendant's affirmative defense of accord and satisfaction "by presenting an affidavit showing [that the defendant] had made no reimbursement" of amounts paid by the plaintiff for an injury caused by a third party); *Azar v. Prudential Ins. Co. of Am.*, 2003-NMCA-062, ¶ 88, 133 N.M. 669, 68 P.3d 909 (holding that the plaintiffs had not met their burden of "demonstrating that no genuine issue of material fact existed as to each element of their claims, *and* as to the [defendant's] affirmative defenses" (emphasis added)).

a different reading is possible. The primary basis for an alternative reading is what the opinions *do not* say; they include no discussion of whether the movants made evidentiary showings that demonstrated prima facie entitlement to judgment on the affirmative defenses. It is tempting to interpret this silence, as the dissent apparently does, to mean that the movant in each case had made such a showing and that the court in each case was simply applying *Goff.* The temptation is especially strong considering that New Mexico generally takes a cautious approach to summary judgment, *see Romero*, 2010-NMSC-035, ¶ 8; that reading the cases as we do effects a return to the approach in *Kassel*, which *Goff* expressly overruled, 1978-NMSC-074, ¶ 10; and that our Supreme Court cited *Goff* in both *Mayfield Smithson Enterprises*, 1995-NMSC-034, ¶ 9, and *Biava*, 1990-NMSC-023, ¶ 11.

**{17}** Although this alternative interpretation is possible, we think it is implausible because it cannot be squared with the explicit reasoning set forth in the opinions. In *Biava*, although "only the legal effect of the facts [was] presented for determination," *Koenig*, 1986-NMSC-066, ¶ 10; *see Biava*, 1990-NMSC-023, ¶ 4, our Supreme Court expressly agreed with the plaintiff-movant that it had "shifted the burden" to the nonmovant by "mov[ing] for summary judgment and adduc[ing the nonmovant's] answer admitting liability" on the promissory note at issue. *Biava*, 1990-NMSC-023, ¶ 11. And in *Mayfield Smithson Enterprises*, our Supreme Court stated that the discussion in "the remainder of [its] opinion" supported the Court's conclusion that the plaintiff had "made a prima facie showing of entitlement to summary judgment." 1995-NMSC-034, ¶ 10. Yet, in detailing the evidence that supported the plaintiff's case for summary judgment, the Court never mentioned, much less discussed, the defendant's affirmative defense that the plaintiff-movant was equitably estopped from denying the existence of a lien. *See id.* ¶¶ 11-21. Finally, in *Galef*, this Court relied on *Biava*, but not *Goff* in holding that the defendant had not carried its burden of rebutting the plaintiff-movant's prima facie showing of entitlement to summary judgment. Contrary to the dissent's assertion, the analyses in these more recent precedents do not "illustrate *Goff*'s application." Dissent Op. ¶ 35. The dissent does not identify anything in the opinions that is consistent with its conclusory assertion.

**{18}** Based on our understanding of binding New Mexico precedent, we conclude that once the plaintiff-movant makes a prima facie case on its claim alone, the defendant bears the burden of demonstrating a genuine issue of material fact regarding any affirmative defense that it relies on to oppose the entry of summary judgment.

**{19}** Applying this rule to the case before us, we now ask, as to each affirmative defense, whether the district court erred by concluding that Defendants failed to carry their burden of showing a genuine issue of material fact. To overcome the presumption that the district court ruled correctly, Defendants "must affirmatively demonstrate" error. *See Farmers, Inc. v. Dal Mach. & Fabricating, Inc.*, 1990-NMSC-100, ¶ 8, 111 N.M. 6, 800 P.2d 1063.

## 1.    Home Loan Protection Act

**{20}**    Defendants argue that summary judgment was improper because there was a genuine issue as to whether the actions of SunTrust[2] violated the Home Loan Protection Act (HLPA), NMSA 1978, §§ 58-21A-1 to -14 (2003, as amended through 2009), and, in turn, the Unfair Practices Act. *See generally* § 58-21A-12 ("A violation of the [HLPA] constitutes an unfair or deceptive trade practice pursuant to the Unfair Practices Act."). In their answer, Defendants pled, as an affirmative defense, a violation of the HLPA under Section 58-21A-4. In its motion for summary judgment, Plaintiff pointed to Defendants' failure to plead facts in support of the defense. In the ensuing litigation, Plaintiff argued that Section 58-21A-11(B) is the only provision of the HLPA that provides a defense to foreclosure and that Defendants did not have a viable defense under that provision. Defendants responded by arguing that their HLPA defense was not based on Section 58-21A-11(B).

**{21}**    On appeal, Defendants argue that SunTrust's conduct violated Subsections (H) and (L) of Section 58-21A-4 because SunTrust never adequately explained the alleged escrow shortage that caused an increase in their monthly mortgage payment, denied Defendants' request for a loan modification, and made no other loss mitigation efforts. *See generally* § 58-21A-4(H) (prohibiting creditors from charging "any fees or other charges, other than those that are bona fide, reasonable and actual, to modify, renew, extend or amend a home loan"); § 58-21A-4(L) (prohibiting creditors from "mak[ing] a home loan that contains a provision that permits the creditor, in its sole discretion, to accelerate the indebtedness" but permitting acceleration "in good faith due to a borrower's failure to abide by the material terms of the loan"). Section 58-21A-4 includes Subsections (A) through (N), each of which defines at least one practice that the HLPA prohibits. Although Defendants argued in the district court that their HLPA defense did not arise under Subsection (B) of Section 58-21A-4, they did not argue for the applicability of any other subsection of the statute. Because Defendants neither identified their HLPA claim as arising under Subsection (H) or (L) of Section 58-21A-4 in the district court nor identified SunTrust's acceleration of their indebtedness as the conduct that violated the HLPA, we conclude that they did not "fairly invoke[]" a ruling on whether either provision barred the entry of summary judgment. *See* Rule 12-321(A) NMRA. Hence, we decline to review that question, *see Crutchfield v. N.M. Dep't of Tax'n & Revenue*, 2005-NMCA-022, ¶ 14, 137 N.M. 26, 106 P.3d 1273, and, absent any other argument on appeal for why the HLPA barred summary judgment for Plaintiff, we cannot conclude that the district court erred in rejecting Defendants' HLPA defense as a matter of law. *See Farmers, Inc.*, 1990-NMSC-100, ¶ 8.

---

2Because Defendants' affirmative defenses are, for the most part, based on SunTrust's conduct, *cf. Bank of N.Y.*, 2014-NMSC-007, ¶ 39 (recognizing that the defendants had asserted an earlier lender's alleged misconduct as a defense to the plaintiff's attempt at foreclosure), we assume without deciding throughout the remainder of this opinion that SunTrust's conduct could preclude Plaintiff from foreclosing Defendants' mortgage.

## 2. Unclean Hands

**{22}** Defendants argue that summary judgment was improper because there was a genuine issue as to whether Plaintiff came to this foreclosure action with unclean hands. We disagree.

**{23}** In their answer, Defendants pled that "[t]he claims and causes of action contained in the [c]omplaint are barred by the doctrine of unclean hands." Plaintiff addressed the affirmative defense in its motion for summary judgment by highlighting that Defendants' answer pled "no specific facts in support of" the defense. Defendants eventually explained the factual basis for their unclean-hands defense in their sur-reply to Plaintiff's summary judgment motion; they contended that SunTrust was responsible for their default as evidenced by SunTrust's refusal to accommodate Defendants' inability to afford their monthly loan payment, which SunTrust had recently increased. Defendants relied on entries in SunTrust's "consolidated notes log" to suggest that SunTrust advised Defendants that their account was "current" and denied their requested loan modification on January 17, 2011, because Defendants did not have a "reason" for imminent default even though their account was in default as of January 1, 2011. In its sur-reply, Plaintiff did not dispute any of the facts that Defendants raised in support of their defense of unclean hands. Instead, Plaintiff contended that, if they were true, Defendants' factual allegations would have no legal effect. *Cf. Biava*, 1990-NMSC-023, ¶¶ 3-4; *Koenig*, 1986-NMSC-066, ¶¶ 10-11.

**{24}** On the record before us, we cannot conclude that the district court erred by granting summary judgment to Plaintiff on Defendants' unclean-hands defense. Because the facts supporting the defense were not disputed, only the legal effect of those facts was before the district court when it ruled on Plaintiff's motion for summary judgment. And Defendants have given us no reason to conclude that (1) Sun Trust dirtied its hands by refusing to modify Defendants' loan, *cf. Magnolia Mountain Ltd. v. Ski Rio Partners, Ltd.*, 2006-NMCA-027, ¶ 37, 139 N.M. 288, 131 P.3d 675 (holding that the district court did not abuse its discretion by rejecting the defendant's unclean hands defense "[d]espite [the defendant's] protestations that [the p]laintiff led it astray"), and (2) unclean hands is a defense to foreclosure under these circumstances. *Cf. id.* (reasoning that it was "unlikely that the defense of unclean hands [was] applicable" to a foreclosure action in part because "there [had] been no allegation of impropriety in the execution of the note and mortgage"). Because Defendants have not cited any legal authority or developed any argument to support either conclusion, we decline to reach the issue. *See Curry v. Great Nw. Ins. Co.*, 2014-NMCA-031, ¶ 28, 320 P.3d 482 ("Where a party cites no authority to support an argument, we may assume no such authority exists."); *Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 (recognizing the "substantial risk of error" that exists when an appellate court "rule[s] on an inadequately briefed issue"). Accordingly, Defendants have not shown that the district court erred by rejecting the defense of unclean hands as a matter of law. *See Farmers, Inc.*, 1990-NMSC-100, ¶ 8.

### 3.    Failure to Mitigate Damages

**{25}**    Defendants argue that summary judgment was improper because there were genuine issues as to whether SunTrust could have mitigated its damages by taking action to forestall Defendants' default and whether Plaintiff eschewed opportunities to reduce the damages after Defendants defaulted. Insofar as Defendants contend that the doctrine of mitigation of damages obligated SunTrust to take action that would have enabled Defendants to avoid default, they have not supported that argument with any pertinent authority, and we therefore decline to review the issue. *See In re of Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329.

**{26}**    To the extent Defendants' argument on appeal is that the district court erred by granting summary judgment as to the measure of damages, that argument is unpreserved. In the district court, Defendants did not argue that Plaintiff's failure to mitigate damages should reduce the amount of the damages award. *See generally Air Ruidoso, Ltd., Inc. v. Exec. Aviation Ctr., Inc.*, 1996-NMSC-042, ¶ 14, 122 N.M. 71, 920 P.2d 1025 (recognizing that a party that fails to mitigate its damages "run[s] the risk that any award of damages will be offset by the amount attributable to its own conduct"). Defendants did not "fairly invoke[]" a ruling, *see* Rule 12-321(A), on whether a genuine issue of material fact as to the amount of damages required the district court to hold a trial exclusively on that question. Because Defendants did not preserve the issue of whether a damages trial was necessary, we decline to review it. *See Crutchfield*, 2005-NMCA-022, ¶ 14.

**{27}**    For these reasons, we reject Defendants' argument that Plaintiff's failure to mitigate damages precluded the entry of summary judgment for Plaintiff.[3] *See Farmers, Inc.*, 1990-NMSC-100, ¶ 8.

### C.    Defendants Failed to Preserve Their Argument That They Needed Additional Discovery to Respond to the Summary Judgment Motion

**{28}**    Finally, Defendants argue that the district court erred by granting summary judgment to Plaintiff when Defendants were awaiting discovery from Plaintiff. In their January 2017 response to Plaintiff's motion for summary judgment, Defendants moved for a continuance to allow them to conduct discovery pursuant to Rule 1-056(F). Defendants estimated that they could complete the requested discovery within six months. As Plaintiff correctly points out, Defendants very soon thereafter received responses to their first set of interrogatories and requests for production. Indeed,

---

[3]Defendants also argue that summary judgment for Plaintiff is "unjust" because this foreclosure action was delayed to Defendants' detriment. To the extent this argument relates to the measure of damages Plaintiff is due, it is unpreserved. To the extent that, with this argument, Defendants are reasserting the laches defense they raised in their answer, we hold that, by not litigating laches in response to Plaintiff's motion for summary judgment, Defendants failed to carry their burden to avoid summary judgment with that defense. And, to the extent Defendants contend that the district court abused its discretion by refusing to grant them equitable relief on some ground other than the equitable defenses they raised in the district court, we dismiss that argument as undeveloped and, based on our review of the record, unpreserved. *See Crutchfield*, 2005-NMCA-022, ¶ 14; *Elane Photography*, 2013-NMSC-040, ¶ 70.

Defendants attached parts of those discovery materials to their sur-reply to Plaintiff's motion for summary judgment. At the hearing on the motion, which was held over a year after Defendants requested a six-month continuance, Defendants again relied on the same discovery materials, and they did not ask the district court to continue the hearing so that they could obtain more evidence through discovery. Because Defendants never alerted the district court that they needed any discovery *in addition to* the responses to interrogatories and requests for production that they had already received and used, Defendants failed to preserve their argument that the district court erred by not allowing additional discovery, and we decline to reach it. *See* Rule 12-321(A); *Nellis v. Farmers Ins. Co. of Ariz.*, 2012-NMCA-020, ¶ 23, 272 P.3d 143 ("The rules of preservation are no different for review of summary judgment than for review of other final orders.").

**{29}** Defendants' use of Rule 1-056(F) to marshal evidence to support their affirmative defenses illustrates a flaw in the dissent's rationale. The dissent contends that an important function of the *Goff* rule is to prevent "banks and other large financial institutions [from] overpower[ing] homeowners, consumers, and tenants, obtaining a summary judgment before the facts in defense are known." Dissent Op. ¶ 32. This conflates two distinct issues: (1) how burdens are allocated in summary judgment proceedings and (2) when nonmovants may use discovery to obtain evidence necessary to resist summary judgment. *Goff* pertains only to the first topic; it has nothing to do with the second, which is governed by Rule 1-056(F).[4] With or without the *Goff* rule, Rule 1-056(F) and the rules of discovery afford all litigants—small and large alike, regardless of the nature of the claims and defenses—a right to use the tried-and-true tools of discovery to acquire evidence they need to oppose summary judgment. The existence of this right is the solution to the problem the dissent identifies. *Cf. Fed. Nat'l Mortg. Ass'n v. Chiulli*, 2018-NMCA-054, ¶¶ 1, 3-5, 20, 425 P.3d 739 (affirming the dismissal, as a discovery sanction, of a foreclosure action in which SunTrust, before the plaintiff took its place as the plaintiff, failed to provide discovery relevant to the defendant's defenses). When the plaintiff-movant possesses evidence that the nonmovant needs to support its affirmative defenses, the nonmovant may simply request that evidence in discovery and, if necessary, seek a Rule 1-056(F) continuance, just as Defendants did in this case. *See also* Rule 1-037(B) NMRA (describing the relief that is available when an opposing party fails to provide discovery).

---

4 The dissent construes *Goff* as "enabl[ing] the defendant either to justify a discovery request pursuant to Rule 1-056(F) or to respond on its affirmative defenses[,]" thus making it "the primary responsibility [of] the defendant to show that trial is required on its defenses." Dissent Op. ¶ 36. We disagree. As we understand *Goff*, our Supreme Court meant to relieve the defendant of any burden of persuasion unless the plaintiff demonstrates prima facie entitlement to judgment on both its claim and the defendant's affirmative defenses. We do not read *Goff* as effectively augmenting Rule 1-056(F) by requiring plaintiffs to volunteer some discovery when the defendant pleads an affirmative defense. Nor do we think that, in stating that the submission of "some material" is enough to shift the burden to defendants on their affirmative defenses, *Goff*, 1978-NMSC-074, ¶ 9, our Supreme Court intended to lower the quantum of evidence required to make a prima facie showing at summary judgment. *See id.* (stating that the obligation to submit "some material" to overcome a defendant's affirmative defenses "is no different than the original obligation on a movant for summary judgment").

**CONCLUSION**

**{30}**   We affirm.

**{31}   IT IS SO ORDERED.**

**ZACHARY A. IVES, Judge**

**I CONCUR:**

**BRIANA H. ZAMORA, Judge**

**JANE B. YOHALEM, Judge (dissenting).**

**YOHALEM, Judge (dissenting).**

**{32}**   I respectfully dissent from the majority's holding that New Mexico law no longer requires a plaintiff who seeks summary judgment on its complaint to demonstrate that no genuine issue of material fact exists as to the defendant's affirmative defenses. The majority concludes that our Supreme Court's decision in *Goff*, is no longer good law, having been implicitly overruled by subsequent Supreme Court decisions. I cannot agree with the majority's conclusion that our Supreme Court's decisions in *Biava*, 1990-NMSC-023, and *Mayfield Smithson Enterprises*, 1995-NMSC-034, overrule *Goff*. Nor am I persuaded on the merits that the ruling in *Goff* should be overturned. In my view, our Supreme Court's decision in *Goff*, requiring that a plaintiff seeking summary judgment present "some material" 1978-NMSC-074, ¶ 9, rebutting the defendant's affirmative defenses in order to support its motion is required by Rule 1-056(E), remains important to ensure that banks and other large financial institutions do not overpower homeowners, consumers, and tenants, by obtaining a summary judgment before the facts in defense are known. For these reasons, as further explained below, I cannot join the majority opinion.

**{33}**   In *Goff*, our Supreme Court overruled this Court's decision in *Kassel*, 1973-NMCA-028, *see Goff*, 1978-NMSC-074, ¶ 10, which held, as the majority does again here today, that a plaintiff need only establish a prima facie case of entitlement to summary judgment on its own claim and need not address the affirmative defenses. *Id.* ¶ 9. *Goff* overruled *Kassel*, holding that a plaintiff who seeks summary judgment disposing of all claims in its favor must present some evidence contravening the defendant's affirmative defenses, as well as presenting a prima facie case on its own claims. *Id.* The plaintiff must submit to the court "the necessary affidavits or other material to expose [the defendant's] affirmative defenses as unmerited." *Id*. The *Goff* Court emphasizes that the additional burden it is imposing on the plaintiff-movant is minimal: the plaintiff is not required to "show or demonstrate beyond all possibility that no genuine issue of fact exists." *Id.* All that is required of the plaintiff is the submission of "some material" in order to establish a prima facie case on the defenses and shift the burden to the other party. *Id.*

**{34}**  In my view, the policy adopted by our Supreme Court in *Goff* remains consistent with Rule 1-056(E) and with New Mexico's cautious approach to summary judgment. *See Romero*, 2010-NMSC-035, ¶ 8. It remains true, as our Supreme Court said in *Goff*, that "one good defense will defeat recovery on a claim," *Goff*, 1978-NMSC-074, ¶ 8 (internal quotation marks and citation omitted), and that, therefore, a plaintiff must show not only that it has support for its claim but must also present some evidence that rebuts the defendant's defenses. Only then does the burden shift to the defendant to show that there is a genuine issue of material fact for trial. *Id.*

**{35}**  I cannot agree that the subsequent cases relied on by the majority abrogate the *Goff* rule. The two Supreme Court opinions relied on by the majority to support its view that the Court has subsequently rejected the *Goff* rule on affirmative defenses each cite to *Goff* and each explicitly rely on *Goff*'s holding that, only when a plaintiff has presented some factual material negating the affirmative defenses, does the burden shift to the defendant, the proponent of the affirmative defenses, to show that a genuine issue of fact requires trial. *Id.* ¶¶ 9, 12; *see Biava*, 1990-NMSC-023, ¶ 11; *Mayfield Smithson Enters.*, 1995-NMSC-034, ¶ 9. Rather than overruling *Goff*, *Biava*, and *Mayfield Smithson Enterprises*, our Supreme Court's subsequent cases illustrate *Goff*'s application. In each case, the initial burden to present a prima facie case on the affirmative defenses has been met by the plaintiff, shifting the burden to the defendant to show that a genuine issue of fact regarding one or more of those defenses requires trial. Although the focus of these cases is primarily on whether the defendant has responded by introducing sufficient evidence to rebut the plaintiff's prima facie case, I do not agree with the majority that this indicates an implicit rejection of *Goff*. Our Supreme Court has continued after its decisions in *Biava* and *Mayfield Smithson Enterprises* to disfavor summary judgment and to impose on the movant the burden of submitting sufficient evidence to make a prima facie case as to each element necessary to support summary judgment. *Romero*, 2010-NMSC-035, ¶¶ 8, 10.

**{36}**  The rule adopted by our Supreme Court in *Goff* has proved to have special importance in cases brought by large financial institutions against consumers, homeowners, and tenants. This case is brought by Fannie Mae against homeowners to foreclose on a mortgage. *See also Kassel*, 1973-NMCA-028, ¶ 3 (landlord-tenant); *Sydow*, 1988-NMSC-029, ¶ 1 (insurance company v. worker); *Biava*, 1990-NMSC-023, ¶ 2 (bank against debtor). Often, in these cases, the evidence concerning both the claim and the affirmative defense is in the hands of the plaintiff financial institution. *See, e.g.*, *Chiulli*, 2018-NMCA-054, ¶¶ 3-4. It is especially important when a large financial institution has the evidence concerning both the transaction and defenses in its possession that the plaintiff be required to submit some material rebutting the affirmative defenses to support its motion for summary judgment. The *Goff* approach, after all, places the primary responsibility on the defendant to show that trial is required on its defenses. The production of some documentation by the plaintiff to support a prima facie case on the affirmative defenses enables the defendant either to justify a discovery request pursuant to Rule 1-056(F) or to respond to establish a genuine issue of material fact on its affirmative defenses.

**{37}** For the reasons stated, I believe that *Goff* remains good law and that its requirement that a plaintiff introduce some material rebutting the defendant's affirmative defenses in order to establish a prima facie case on its motion for summary judgment, remains an important safeguard against a rush to summary judgment by large financial institutions when an exploration of the facts would show that a trial is necessary to resolve disputed affirmative defenses. Because the majority holds otherwise, I respectfully dissent.

**JANE B. YOHALEM, Judge**