This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-40608**

**ONEMAIN FINANCIAL GROUP, LLC,**

      Plaintiff-Appellee,

v.

**PATRICK PENNINGTON and
CARLTON PENNINGTON,**

      Intervenors/Third-Party Plaintiffs/
      Counterclaimants-Appellants,

and

**CARMEN J. PENNINGTON; ASSOCIATES
FINANCIAL SERVICES COMPANY OF NEW
MEXICO, INC.; AMERICAN FURNITURE
COMPANY; and THE UNKNOWN SPOUSE
OF CARMEN J. PENNINGTON,**

      Defendants,

and

**SPS, INC. a/k/a SELECT PORTFOLIO
SERVICING; and JOHN DOES 1-4,**

      Third-Party Defendants,

and

**CARLTON PENNINGTON and PATRICK
PENNINGTON,**

      Plaintiffs-Appellants,

v.

**HOUSE & ALLISON, APCA, a New Mexico company and an Arizona company; ONEMAIN FINANCIAL GROUP, LLC, a New Mexico registered foreign corporation; ONEMAIN FINANCIAL HOLDING INC., a manager of Onemain Financial LLC, a Delaware corporation; SELECT PORTFOLIO SERVICES, INC., registered in New Mexico as a registered foreign corporation; ROSE L. BRAND & ASSOCIATES, PC, a New Mexico domestic profit corporation; and JOHN DOES 1-6,**

      Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Benjamin Chavez, District Court Judge**

Carlton Pennington
Patrick Pennington
Albuquerque, NM

Pro Se Appellants

Houser LLP
Solomon S. Krotzer
Albuquerque, NM

for Appellees OneMain Financial Group, LLC; Houser & Allison, APC; Select Portfolio Servicing, Inc.; and OneMain Financial Holding, Inc.

**MEMORANDUM OPINION**

**YOHALEM, Judge.**

**{1}**    Patrick and Carlton Pennington (Penningtons) appeal from the district court's order granting OneMain Financial Group, LLC's (OneMain) motion for summary judgment on its claim for in rem judicial foreclosure, rejecting Penningtons' affirmative defenses. The district court also granted summary judgment to OneMain and Houser & Allison, APCA; OneMain Financial Holding, Inc.; Select Portfolio Services, Inc.; Rose L. Brand & Associates PC; and John Does 1-6 on the claims made by Penningtons in their complaint in the district court case No. D-202-CV-2019-07273, consolidated with the foreclosure case, alleging malicious abuse of process, in violation of the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692; the New Mexico Unfair Practices Act, NMSA 1978, Sections 57-12-1 to -26 (1967, as amended through 2019), racketeering;

fraudulent misrepresentation; negligent misrepresentation; intentional infliction of emotional distress; civil conspiracy, and prima facie tort, all allegedly committed in the foreclosure process. We affirm.

## DISCUSSION

**{2}** Penningtons raise numerous (well more than twenty) claims of error by the district court in its resolution by summary judgment of this consolidated case. Rather than attempting to address each of Penningtons' arguments separately, we have grouped their claims based on our understanding of the gravamen of each of their arguments on appeal. We address any relevant facts within our discussion of each claim.

**{3}** We note that Penningtons appeared in the district court and are appearing in this Court as pro se litigants. "Although pro se pleadings are viewed with tolerance, a pro se litigant is held to the same standard of conduct and compliance with court rules, procedures, and orders as are members of the bar." *In re Camino Real Env't Ctr., Inc.*, 2010-NMCA-057, ¶ 21, 148 N.M. 776, 242 P.3d 343 (omission, internal quotation marks, and citation omitted). This Court will review pro se arguments to the best of its ability, but cannot respond to arguments that are unclear, conclusory, and undeveloped. *See State v. Guerra*, 2012-NMSC-014, ¶ 21, 278 P.3d 1031 (acknowledging that appellate courts are under no obligation to review unclear or undeveloped arguments). We encourage litigants to limit the number of issues they choose to raise on appeal in order to ensure that the issues presented are ones that can be adequately supported by argument, authority, and factual support in the record. *See Rio Grande Kennel Club v. City of Albuquerque*, 2008-NMCA-093, ¶¶ 54-55, 144 N.M. 636, 190 P.3d 1131. This is an example of a case where the sheer number of arguments presented on appeal negatively impact the efficacy with which each of those issues could be presented. *See Clayton v. Trotter*, 1990-NMCA-078, ¶ 12, 110 N.M. 369, 796 P.2d 262. We employ a presumption of correctness in the rulings of the district court, and the burden is on the appellant to clearly demonstrate error. *See Farmers, Inc. v. Dal Mach. & Fabricating, Inc.*, 1990-NMSC-100, ¶ 8, 111 N.M. 6, 800 P.2d 1063.

**{4}** With this predicate, we turn to Penningtons' arguments.

## I.    Probate-Related Claims

**{5}** Penningtons raise multiple objections to the district court's conclusion that "[t]his action to enforce a mortgage is not prevented by the New Mexico Uniform Probate Code [(the Probate Code)]," NMSA 1978, §§ 45-2-101 to 45-3-816 (1975, as amended through 2016). The district court adopted this conclusion as the law of the case at the hearing on the summary judgment motions.

**{6}** Penningtons claim on appeal that the district court erred in concluding that an in rem foreclosure action can proceed after the death of the borrowers when the financial

institution seeking foreclosure has not filed a claim in the probate of the borrowers' estate or joined the borrowers' personal representative. In their affirmative action, they accuse OneMain and parties related to OneMain's foreclosure efforts of malicious abuse of process in part for avoiding the requirements of the Probate Code.

{7}     In support of their claim that any foreclosure had to be filed in the probate proceeding, Penningtons challenge the characterization of the foreclosure action as an in rem action, claiming it is at its essence an action in contract for a debt of the deceased borrowers, a cause of action over which the probate court would have exclusive jurisdiction. According to Penningtons, the summary judgment of foreclosure entered by the district court after the probate proceedings were concluded is null and void "as the court had no jurisdiction."

{8}     Alternatively, Penningtons argue that, even if the district court had jurisdiction, only the personal representative of the borrowers' estate appointed by the probate court had the authority to decide if OneMain has a security interest in the property and if that interest is valid. The personal representative in the probate proceeding, Carmen Pennington, inherited the property following probate. Penningtons claim that Carmen Pennington's deed is no longer subject to the mortgage and cannot be collaterally attacked in this proceeding. Penningtons argued these issues repeatedly in the district court and have, therefore, preserved them for our review.

{9}     There are no material issues of fact in dispute and their appeal on the probate issues summarized above presents only questions of law. "[W]e apply de novo review [to questions of law] and are not required to view the appeal in the light most favorable to the party opposing summary judgment." *City of Albuquerque v. BPLW Architects & Eng'rs, Inc.*, 2009-NMCA-081, ¶ 7, 146 N.M. 717, 213 P.3d 1146.

{10}    The parties do not appear to dispute that the borrowers, Penningtons' grandparents, died prior to the filing of this action; that both of their estates were probated; that the probate proceedings were closed before this action was filed; that the real property at issue was distributed in probate to Carmen Pennington; that neither OneMain nor its predecessors in interest filed a claim in probate court; and that OneMain does not seek to recover on the debt, only to foreclose on the mortgage.

{11}    We agree with the district court that this action to foreclose a mortgage is not precluded by the Probate Code. Section 45-3-803, titled "Limitation on presentation of claims," sets the requirements for pursuing a claim in probate. This section expressly provides that "[n]othing in this section affects or prevents: (1) any proceeding to enforce any mortgage, pledge or other lien upon property of the estate." Section 45-3-803(D)(1). Section 45-3-812 similarly exempts "the enforcement of mortgages, pledges or liens upon real or personal property in an appropriate proceeding" from the prohibition on court proceedings outside of probate to collect on debts of the estate.

{12}    Penningtons' claims that OneMain was required to file its foreclosure claim in probate, and that the district court lacks jurisdiction to foreclose on the mortgage are

based on a misunderstanding of the exemption from probate found in Sections 45-3-803(D) and -812. Holders of secured claims, including mortgages, are allowed to enforce their lien on real property, and are specifically allowed to foreclose on a mortgage, without presenting their claim in probate court. This exception to probate is a longstanding common law principle adopted by the Probate Code. *See Ross v. Lewis*, 1917-NMSC-085, ¶ 1, 23 N.M. 524, 169 P. 468 (agreeing with the proposition later reflected in the Probate Code that "a debtor whose claim is secured by mortgage, pledge, or any specific lien, need not present his claim [in probate court]).

**{13}** Penningtons' alternative argument, that Section 45-3-814 authorizes the personal representative of the estate in probate to decide whether a mortgage is valid and enforceable, and that no separate foreclosure action can be brought where the personal representative has not recognized the mortgage as valid and enforceable, is founded on a misapprehension of the legal principles stated in Section 45-3-814. Section 45-3-814 of the Probate Code authorizes the personal representative of a decedent's estate, which includes a property subject to a mortgage, to choose to pay off the mortgage out of the estate and then distribute the property, transfer the property to the creditor to satisfy the mortgage, or simply distribute the property subject to the mortgage. Unless the mortgage and other liens on the property are paid off by the personal representative, the distributee, the party that inherits the property—here Carmen Pennington—takes the property subject to the mortgage. Section 45-3-814 states, "If any assets of the estate are encumbered by mortgage, pledge, lien or other security interest, the personal representative may pay the encumbrance or any part thereof, renew or extend any obligation secured by the encumbrance or convey or transfer the assets to the creditor in satisfaction of his lien, in whole or in part, whether or not the holder of the encumbrance has presented a claim, if it appears to be for the best interest of the estate. Payment of an encumbrance does not increase the share of the distributee entitled to the encumbered assets unless the distributee is entitled to exoneration." Penningtons presented no evidence on summary judgment that the debt to OneMain was paid during probate or that Carmen Pennington was entitled to exoneration. Absent such payment or exoneration under Section 45-3-814, the property is transferred to the distributee encumbered by the secured interest. Penningtons' claim that the personal representative can simply decide to invalidate the mortgage without paying the creditor misconstrues Section 45-3-814. Their claim that Carmen Pennington owned the property free and clear of the mortgage was properly rejected by the district court in its grant of summary judgment to OneMain.

**{14}** Penningtons claim that there is no distinction between an in rem foreclosure action and an in personam foreclosure action, and that any attempt to distinguish these actions by OneMain is designed to avoid the requirements of the Probate Code. Their claim is not supported by the law. The distinction between the two remedies is described in our Supreme Court's decision in *Kepler v. Slade*, 1995-NMSC-035, ¶ 8, 119 N.M. 802, 896 P.2d 482. Our Supreme Court describes an in rem foreclosure action as originating in "the historic view that a foreclosure action is purely quasi in rem, affording relief only against the secured property." A suit on a bond or note to collect money on a debt, in contrast, is in personam. *Id.* Although Penningtons' argument that

an in rem foreclosure action is really directed against the landowner has some logic, the law continues to recognize the right of a lender holding a mortgage as security to bring a foreclosure action in which only property rights concerning the property are determined. Such an action is identified by the law as an in rem action. Because it does not impose any personal liability on the owner of the property or on the borrower, no probate claim need be filed against the estate. *See id.* Because OneMain sought only to foreclose on the mortgage and did not seek to recover money on the note, this action was properly brought as an in rem foreclosure action.

## II.   Standing

**{15}**   Penningtons next claim that there were material issues of fact for trial as to whether OneMain had standing to foreclose on the mortgage. Where summary judgment is challenged on the basis that there are material issues of fact for trial, we "review the whole record in the light most favorable to the party opposing summary judgment to determine if there is any evidence that places a genuine issue of material fact in dispute." *HSBC Bank USA v. Wiles*, 2020-NMCA-035, ¶ 8, 468 P.3d 922 (internal quotation marks and citation omitted). "A summary judgment movant bears the initial burden of establishing a prima facie case for summary judgment." *Fed. Nat'l Mortg. Ass'n v. Trissell* (*Trissell*), 2022-NMCA-001, ¶ 6, 503 P.3d 381 (internal quotation marks and citation omitted). "A movant establishes a prima facie case when the motion is supported by such evidence as is sufficient in law to raise a presumption of fact or establish the fact in question unless rebutted." *Id.* (internal quotation marks and citation omitted). "Upon the movant making a prima facie showing, the burden shifts to the party opposing the motion to demonstrate the existence of specific evidentiary facts which would require trial on the merits." *Bank of N.Y. Mellon v. Lopes*, 2014-NMCA-097, ¶ 6, 336 P.3d 443 (internal quotation marks and citation omitted). "A party may not simply argue that such evidentiary facts might exist, nor may it rest upon the allegations of the complaint." *Horne v. Los Alamos Nat'l Sec., L.L.C.*, 2013-NMSC-004, ¶ 15, 296 P.3d 478 (alteration, internal quotation marks, and citation omitted).

**{16}**   "Standing to foreclose depends on whether the foreclosing party can demonstrate that it had the right to enforce the note and the right to foreclose the mortgage at the time the foreclosure suit was filed." *Trissell*, 2022-NMCA-001, ¶ 8 (internal quotation marks and citation omitted). "To establish its right to enforce the promissory note underlying the mortgage, a third party seeking foreclosure must prove that, at the time of filing, it had both physical possession *and* the right to enforcement through either a proper indorsement or a transfer by negotiation." *Id.* (internal quotation marks and citations omitted). Satisfying these two requirements makes a person the "holder" of the note as defined in the Uniform Commercial Code. NMSA 1978, § 55-1-201(b)(21)(A) (2005, amended 2023) (defining "holder" as "the person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession").

**{17}**   We agree with the district court that OneMain introduced sufficient evidence on summary judgment to establish that it met both the requirement of physical possession

of the note at the time the complaint was filed and that it had the right of enforcement through a proper indorsement to the bearer, in blank. OneMain demonstrated that it was in possession of a properly indorsed note by attaching to the complaint a copy of the note, along with two indorsements. The first indorsement transferred the note to MorEquity shortly after the loan was made, the second indorsement was an in blank indorsement from MorEquity. These documents attached to the complaint are sufficient to establish a prima facie case that the foreclosing party is the holder of the note at the time the complaint is filed, entitled by indorsement in blank to enforce it. *See Deutsche Bank Nat'l Tr. Co. v. Johnston*, 2016-NMSC-013, ¶ 23, 369 P.3d 1046 (explaining that a foreclosing party may establish its right to enforce the note by "attaching a note containing an undated indorsement to the initial complaint").

**{18}** OneMain having established a prima facie case that it was the holder of the note and entitled to enforce it at the time the complaint was filed, the burden then shifted under our summary judgment law to Penningtons to show that there were material facts in dispute requiring trial. As noted previously, Penningtons were required to present evidence that would be admissible at trial to establish that there is a dispute of fact requiring a trial.

**{19}** We understand Penningtons to be making three arguments on standing: (1) that attaching copies of the documents to the complaint, along with an affidavit of possession, is not enough to conclusively prove that OneMain was in possession of the original note at the time the complaint was filed; (2) the named plaintiff at the time the complaint was filed was Springleaf Financial Services, Inc., not OneMain Financial Services, and substitution of OneMain as the real party in interest required OneMain to file a new complaint to establish its possession of the note; and (3) the allonge indorsing the note in blank was not signed by an authorized vice president of MorEquity, but was "manufactured," and that the allonge was fraudulently prepared at a time MorEquity was not in possession of the note. We address each argument in turn.

**{20}** First, Penningtons' claim that OneMain could only establish a prima facie case of possession of the indorsed note by filing the original note in court is not well-taken. *Johnston* holds that a foreclosing party may establish its right to enforce the note at the time the complaint is filed by "attaching a note containing an undated indorsement to the initial complaint." *Id.* The original note need not be physically produced. The copy of the note and the indorsements, along with the affidavit of possession filed by OneMain, was sufficient to establish a prima facie case, and Penningtons' argument to the contrary does not satisfy the burden to present admissible evidence to rebut that prima facie case.

**{21}** Penningtons' second claim is that OneMain could not properly be substituted for Springleaf as the foreclosure plaintiff. According to Penningtons, a new complaint with the note and indorsement in blank attached, was required. Penningtons do not dispute that OneMain was the successor of Springleaf following a name change. They point instead to evidence that Springleaf had ceased to exist as a registered corporation in New Mexico in October 2016 before the complaint was filed. They argue that a

complaint filed by an unregistered corporation that had already been replaced by OneMain was invalid. Penningtons ask this Court to conclude that Springleaf did not have standing to file this foreclosure action, and that OneMain was required to file a new complaint proving its possession of the note and indorsement at the time of filing. We do not agree.

**{22}** New Mexico Rules of Civil Procedure allow a mistake as to the identification of the real party in interest to be corrected within a reasonable time by amending the complaint to substitute or add the name of the real party in interest. *See* Rule 1-017(A) NMRA. Rule 1-017(A) provides that "such ratification, joinder or substitution [of the real party in interest] shall have the same effect as if the action had been commenced in the name of the real party in interest."

**{23}** The facts set forth by Penningtons show that the naming of Springleaf as the plaintiff at the time the complaint was filed was a mistake. Springleaf was not the real party in interest because it had already become OneMain at the time of filing. The evidence shows that OneMain was the proper plaintiff at the time the complaint was filed, and was in possession of the note and the right to enforce it at that time. Our rules treat this as an error in identifying the real party in interest and allow this error to be corrected by substituting the real party in interest. Rule 1-017(A) specifically provides that the action shall be treated "as if the action had been commenced in the name of the real party in interest."

**{24}** Penningtons devote much of their brief to their third argument. The arguments made by Penningtons in the district court as to the validity of the signed indorsement in blank are confusing. We understand Penningtons to claim that the indorsement in blank, signed by Monte Conrad for MorEquity, is invalid because it was "manufactured" and was fraudulently affixed at a time when MorEquity was not in possession of the note.

**{25}** We begin with a presumption that an indorsement valid on its face is authorized and otherwise proper. *See* NMSA 1978, § 55-3-308(a) (1992) (presuming that the signature on a note is authentic and authorized). We look to whether Penningtons provided any admissible evidence to support their claim that the signature was "manufactured" at a time when MorEquity was not in possession of the note and had no authority to transfer it in blank. We observe that, to avoid summary judgment against them, Penningtons needed to introduce sufficient evidence into the summary judgment record to overcome the presumption found in the Uniform Commercial Code, § 55-3-308, that the signature on a note is both authentic and authorized.

**{26}** Penningtons claim that the deposition of Monte Conrad, a vice president of MorEquity, places both the authenticity and authority of the signature on the note in dispute. Rather than disproving either the genuineness of his signature or his authority to sign for MorEquity, however, Monte Conrad's deposition testimony confirms that the signature on the document is his genuine signature, that he was a vice president of MorEquity at the time he signed the indorsement in blank, and that he had authority to sign such indorsements. Monte Conrad testified that he likely indorsed the note in 2008

or 2009, during the mortgage foreclosure crisis when MorEquity was looking to sell some of its loans to other financial institutions. Monte Conrad testified that the fact this note remained indorsed in blank indicates that it was not sold, but likely remained in MorEquity's portfolio.

**{27}** Penningtons attempted to raise an issue of fact for trial by claiming that a handwriting expert would be able to testify that Monte Conrad's signature was likely stamped on the document, based on comparisons with other verified signatures. No affidavit from such an expert was introduced into the summary judgment record to support this claim. Second, Penningtons pointed to the absence of holes in the allonge, arguing it was not attached to the note and filed with the complaints to enforce the mortgage in 2008 and 2011, ergo, it did not exist and was not created until 2012 or later. Penningtons then speculate, without any evidence, that the note would have been securitized in 2012 or 2014, when they claim the allonge was signed. They also speculate separately that it was signed in 2000 and was invalid because Monte Conrad was not a vice president of MorEquity at that time.

**{28}** Penningtons' arguments are purely speculative. The absence of holes in the allonge does not raise a reasonable inference that the allonge is fraudulent. Indeed, the absence of holes punched in the allonge is consistent with Monte Conrad's testimony that the indorsement was signed by him in 2008 or 2009, and that it was placed in a file with the note to await a sale of the note. The allonge clearly identifies the note. There is no legal requirement that it be stapled or clasped to the note to be effective. Nor do the Penningtons explain why they believe that the original allonge was required to be filed with the note in the earlier litigation.

**{29}** *PNC Mortgage v. Romero*, 2016-NMCA-064, ¶¶ 32-34, 377 P.3d 461, which Penningtons cite, does not support their claim. In *PNC Mortgage*, the defendants introduced admissible evidence showing the existence of a securitized trust that predated the plaintiff's merger with the original lender, creating an issue for trial as to whether the plaintiff was actually in possession of the note at the time the complaint was filed (or whether it was held by the trust). *Id.* No such evidence was presented here to create a "muddled story of chain of title." *Id.* ¶ 33 (internal quotation marks omitted).

**{30}** As our Supreme Court stated in *Romero v. Philip Morris Inc.*, 2010-NMSC-035, ¶ 10, 148 N.M. 713, 242 P.3d 280:

> Once this prima facie showing has been made, the burden shifts to the non[]movant to demonstrate the existence of specific evidentiary facts which would require trial on the merits. A party may not simply argue that such evidentiary facts might exist, nor may it rest upon the allegations of the complaint. Rather, the party opposing the summary judgment motion must adduce evidence to justify a trial on the issues. Such evidence adduced must result in reasonable inferences. An inference is not a supposition or a conjecture, but is a logical deduction from facts proved and guess work is not a substitute therefor. When disputed facts do not

support reasonable inferences, they cannot serve as a basis for denying summary judgment. Only when the inferences are reasonable is summary judgment inappropriate.

(alterations, internal quotation marks, and citations omitted).

**{31}** Having failed to introduce evidence which creates a reasonable inference that the note was securitized and held by a trust and was not in MorEquity's hands at the time it was indorsed in blank, or that the signature was not genuine, Penningtons failed to rebut Monte Conrad's testimony that his signature was both genuine and authorized. Summary judgment on the standing of OneMain was therefore appropriately granted.

### III.   NMSA 1978, § 37-1-16 (1957)

**{32}** Penningtons also argue that OneMain lacked authority to foreclose on the mortgage under Section 37-1-16, a provision governing the accrual of a contract claim for purposes of the statute of limitations. Penningtons take a phrase from this section out of context. Section 37-1-16 requires the rerecording of a mortgage based on a new promise to pay "prior to the date when any action to foreclose . . . would otherwise be barred." Since default on the mortgage in this case occurred in August 2016 and this action was filed in 2017, well before the expiration of the six-year statute of limitations, OneMain was not required to rerecord the mortgage to preserve its right to foreclose even if there was a new promise to pay.

### IV.   Penningtons' Affirmative Defenses and Affirmative Claims

**{33}** Penningtons misapprehend their burden on both their affirmative defenses in the mortgage foreclosure action and the claims raised in their complaint in the district court case No. D-202-CV-2019-07273. It is their burden as to both affirmative claims and defenses to establish a prima facie case. *See Trissell*, 2022-NMCA-001, ¶ 12. The standard set forth in *Trissell* places the onus on the defendant to provide factual support for its affirmative defenses "after the plaintiff has made a prima facie case on its claim alone." *Id.*; *accord Fid. Nat'l Bank v. Tommy L. Goff, Inc.*, 1978-NMSC-074, ¶¶ 5, 8-9, 92 N.M. 106, 583 P.2d 470. We agree with the district court that Penningtons have not carried their burden of showing a genuine issue of material fact on their affirmative defenses.

**{34}** Similarly, on their affirmative claims in their consolidated case, Penningtons presented no evidence establishing the elements of their many claims. They relied entirely on the evidence already discussed, presented in opposition to OneMain's motion for summary judgment. Their affirmative claims allege fraud, racketeering, misrepresentations, and conspiracy, as well as unfair trade practices and deceptive debt collection. All of the affirmative claims are founded on the same allegations made in defense of the foreclosure: that OneMain brought its foreclosure action without authority, misrepresented the authenticity of signatures on the documents, manufactured indorsements, and willfully failed to file a legally required claim in probate.

Having failed to raise an issue of fact on their defenses to summary judgment, Penningtons have also failed to establish a prima facie case on their affirmative claims, founded on the same allegations.

## V.     Remaining Arguments

**{35}**     Penningtons' many remaining arguments on appeal are not sufficiently developed or supported by citation to the record to allow us to review their claims. Penningtons have not included specific citation to the pages, in the more than 4,000 page record, where their remaining arguments were preserved for our review, as is required by our Rules. *See* Rules 12-209(A) NMRA (defining the record proper); 12-318(A) NMRA (requiring citations to the record proper to support factual assertions and legal arguments). We are not required to search the record on our own. *In re Estate of Heeter*, 1992-NMCA-032, ¶ 15, 113 N.M. 691, 831 P.2d 990 ("This [C]ourt will not search the record to find evidence to support an appellant's claims."). Nor are any of the Penningtons' remaining claims supported by a developed argument, acknowledging the district court's decision and explaining, with citation to the facts in the record and to legal authority, why that decision was erroneous. In a brief on appeal, "it is the appellant's burden to demonstrate, by providing well-supported and clear arguments[] that the district court has erred*." Premier Tr. of Nev., Inc. v. City of Albuquerque*, 2021-NMCA-004, ¶ 10, 482 P.3d 1261.

**{36}**     Absent any argument applying the relevant law to the particular facts and circumstances and explaining why the district court erred, we apply our presumption of correctness and affirm. *See State v. Oppenheimer & Co.*, 2019-NMCA-045, ¶ 8, 447 P.3d 1159 ("On appeal, there is a presumption of correctness in the rulings and decisions of the district court, and the party claiming error must clearly show error." (alterations, internal quotation marks, and citation omitted)).

## CONCLUSION

**{37}**     For the foregoing reasons, we affirm the district court's grant of summary judgment in all respects.

**{38}     IT IS SO ORDERED.**

**JANE B. YOHALEM, Judge**

**WE CONCUR:**

**GERALD E. BACA, Judge**

**KATHERINE A. WRAY, Judge**