## MILLIGAN and others *v.* CROMWELL.

Filed January 18, 1886.

1. REPEAL—USURY—EFFECT ON CONTRACTS.

The act of 1866, (Gen. Laws, 421,) declaring usurious contracts illegal and criminal, was repealed by the act of 1872, (Gen. Laws, 414,) making all contracts for interest legal and binding. This in turn was repealed by the act of March 2, 1882, (Acts 1882, p. 43,) establishing 12 per cent. as the legal rate of interest, and making usurious contracts void as to the excess beyond that rate. *Held*, that the repeal of the act of 1872 did not operate a revival of the act of 1866, and that usurious contracts are not invalid, except as to the excess beyond the legal rate.

2. MORTGAGE—DEFECTIVE POWER OF SALE—FORECLOSURE.

A mortgage which by its terms is expressly intended to secure payment of a note, but is defective, in the power of sale, in providing only for payment of costs of the trust and interest, without making any provision for the principal, will be foreclosed by a court of equity without waiting for the instrument to be reformed.

Error to district court, San Miguel county.

*O'Bryan & Pierce,* for plaintiffs in error.

*Lee & Fort,* for defendant in error.

BRINKER, J. This is a suit in chancery, commenced in the court below to foreclose the following mortgage:

"This indenture, made this sixteenth day of September, A. D. 1882, between Madison M. Milligan, unmarried, and James C. Milligan and Flora E. Milligan, his wife, of the first part, and Charles T. Cromwell, of Rye, New York, of the second part, witnesseth that the said parties of the first part, for and in consideration of the sum of ($2,000) two thousand dollars, to them in hand paid by the said party of the second part, the receipt whereof is hereby confessed and acknowledged, and for the further consideration of the debt hereunder mentioned and created, have granted, bargained, sold, demised, conveyed, released, and confirmed, and by these presents do grant, bargain, sell, remise, convey, release, and confirm unto the said party of the second part, his heirs and assigns, forever, all the following described lot or parcel of land and real estate situate, lying, and being in the county of San Miguel, and territory of New Mexico, and better described as follows, to-wit:

"That certain lot on the northerly side of Center street, being the second house and lot easterly from the corner of Grand avenue, being parts of lots 18, 19, and 20, of block No. 8, in East Las Vegas, beginning at a point 25 feet easterly from the S. W. corner of lot 18, in said block; thence easterly along Center street 25 feet; thence northerly along said lots 18, 19, and 20, 75 feet; thence westerly along the line of lot 20, 25 feet; thence southerly 75 feet across lots 18, 19, and 20, to the place of beginning,—being part of the Las Vegas grant, made in 1835, and confirmed by congress in June, 1860; together with all and singular the lands, tenements, hereditaments, and appurtenances thereunto belonging, or in anywise appertaining, and the reversion and reversions, remainder and remainders, rents, issues, and profits thereon, and all the estate, right, title, interest, claim and demand whatsoever of the said parties of the first part, either in law or in equity, of, in, and to the above bargained and described premises, with the hereditaments and appurtenances, to have and to hold the said premises above bargained and described, with the appurtenances, unto the said party of the second part, his heirs and assigns, forever: provided, however, and these presents are upon the condition, whereas, the said parties of the first part are justly indebted unto the said party of the second part in the sum of $2,000, as evidenced by a promissory note bearing even date herewith, which said note is in the words and figures as follows, to-wit:

" 'LAS VEGAS, N. M., September 16, 1882.

" ' Two years after date, for value received, we, jointly and severally, promise to pay to Charles T. Cromwell, or order, without defalcation, $2,000, with interest at the rate of 15 per cent. per annum, payable for the first year half yearly, after that quarter yearly; both principal and interest to be paid, with exchange on New York, at the San Miguel National Bank, of Las Vegas, New Mexico, with interest at said rate on each payment for six days from the date of each payment unto said bank, and remittance.'

"And the said parties of the first part being anxious to secure the payment of said sum of money in said promissory note mentioned when the same shall become due and payable, together with all interest that may accrue thereon: now, therefore, if the said parties of the first part, their heirs, executors, administrators, or assigns, shall well and truly pay, or cause to be paid, to the party of the second part, or to his order, the said sum of money in said promissory note specified, when the same shall become due and payable, together with all interest that may have accrued thereon, then, and in that case, this indenture shall be null and of no effect, and absolutely void.

"But in case of the failure of the payment by the said parties of the first part, their heirs and executors, administrators, and assigns, of the said principal or interest sums of money in said promissory note specified, when the same severally shall become due and payable, together with all interest that may have accrued thereon, then, and in that case, the said party of the second part, or his agent or attorney, is hereby authorized and empowered to take possession of said granted house and real estate and premises; and, after having given notice of the time and place of sale by four hand-bills posted at public places in the county of San Miguel at least twenty days prior to the sale, or by notices published in some newspaper printed in the county of San Miguel at least twenty days prior to the time of sale, expose at public auction, at the south steps of the court-house, in Las Vegas, to the highest bidder, for cash, the said granted premises, house, and real estate, and to execute and deliver to the purchaser or purchasers thereof a good and sufficient deed therefor, and to apply the proceeds arising from said sale to the payment of the costs and expenses of the foreclosure.   And the parties of the first part agree to insure, and keep insured, the buildings on said———to their insurable value, and assign the policy to the said Cromwell as further collateral security, such insurance to be in a company to be approved by said Cromwell; and said premises may be bid off by and conveyed to a trustee to be appointed by said Cromwell.   Out of the said proceeds shall be paid the interest which shall have accrued, having first paid out of said proceeds the cost of such sale, and the residue, if any should remain, to pay over to the parties of the first part."

The bill was in the usual form.

The defendants Madison M. Milligan and James C. Milligan filed their separate answer, in which they admitted the execution of the mortgage, the receipt of the money the repayment of which the mortgage was given to secure; but allege that they agreed to pay to plaintiff for the use of said money interest in excess of the legal rate, namely, 15 per cent. per annum; that thereby said mortgage became and was illegal and void, and that defendants were under no obligations to pay the debt secured therein; that said mortgage operated as a cloud upon their title; and they pray that it be canceled.   There was no appearance or answer by defendant Flora E. Milligan.

At the hearing a decree was rendered for the plaintiff for the principal of the debt, with interest thereon at the rate of 12 per cent.

per annum up to that time; that the mortgage be foreclosed; and the premises sold to satisfy said debt and interest. To review this decree defendants sued out this writ of error, and assign as error the following:

(1) The court erred in rendering a decree in favor of complainant, and in not dismissing the action on the ground that the contract upon which this action was brought was void and illegal for usury expressed upon its face. (2) The court erred in directing a sale of the mortgaged premises.

1. To sustain the first assignment of error, the plaintiffs in error (defendants below) rely upon the act of 1866. Gen. Laws, 421. Sections 1 and 2 of this act provide for licensing pawnbrokers, and limiting the sums to be charged by them for loans of money. Section 3 provides that if any person shall loan money at a greater rate of interest than that established by law, the contract shall be illegal, and the person so offending shall be punished as for obtaining money by false pretenses. In 1872 (Gen. Laws, 414) an act was passed abolishing the plea of usury, and providing that all contracts concerning the payments of money should be legal and binding, according to their intent and meaning. It was conceded on the argument that this act repealed the act of 1866, *supra.* On March 2, 1882, (Acts 1882, p. 43,) an act was passed the first section of which repealed the act of 1872 in so many words. The second section prescribed the maximum rate of interest to be charged upon open accounts and written contracts, and provided that nothing in excess of such maximum could be recovered. Plaintiffs in error contend that the act of 1882, by reason of the repeal of the act of 1872, revived the act of 1866, and that the latter act was in force when the mortgage in suit was executed; that the rate of interest specified in the note secured by the mortgage being in excess of 12 per cent. per annum, brought the entire contract within the provisions of section 3, Acts 1866, and thus rendered it void.

Defendant in error concedes that this would be true at common law, if the act of 1882 was an unqualified repeal of the act of 1872; that is, if it simply repealed the act of 1872, and made no provision on the subject treated of in the repealed statutes of 1866 inconsistent therewith. "By the repeal of a repealing statute (the new law containing nothing in it that manifests the intention of the legislature that the former act shall continue repealed) the original statute is revived." Potter's Dwar. 159.

An examination of the acts of 1866 and 1882, in the light of the rule in Dwarris, will enable us to determine whether the law is as contended for by the plaintiffs in error. Both acts treat of interest upon money loaned. The act of 1866, while allowing interest upon written contracts for the payment of money up to 12 per cent. per annum, declares emphatically that, if more than 12 per cent. be provided for, the contract shall be illegal and the lender indicted and punished as for obtaining money by false pretenses. Thus, in addition to de-

priving the lender of an action upon the contract, it subjects him to punishment and disgrace. The act of 1882 fixes the maximum of interest that may be recovered on such contracts at 12 per cent. per annum, but does not provide a punishment for charges in excess thereof, except the implied forfeiture of such excess. "In written contracts for the payment of money it shall not be legal to recover more than 12 cent. interest per annum," is the language of the act of 1882. If it shall not be legal to recover more than 12 per cent. interest per annum upon written contracts, the converse of that proposition would seem to follow, as a necessary consequence: that it shall be lawful to recover on such contracts 12 per cent. interest per annum. From this it will be seen that the act of 1882 is clearly inconsistent with section 3 of the act of 1866, and "manifests the intention of the legislature that the former act (section 3, Acts 1866) shall continue repealed." Potter's Dwar., *supra*.

We are of opinion, therefore, that the act of 1882, repealing the act of 1872, was not such an unqualified repeal of that act (1872) as to revive the act of 1866, and that the principal of the debt, with interest thereon at 12 per cent. per annum, is valid. The first assignment of error cannot be sustained.

2. In support of the second assignment of error our attention is called to that portion of the mortgage containing the power of sale and distribution of the proceeds, which, after providing for the advertisement and sale, proceeds as follows:

"* * * and to apply the proceeds arising from said sale to the payment of the costs and expenses of the foreclosure. And the parties of the first part agree to insure, and keep insured, the buildings on said ——— to their insurable value, and assign the policy to the said Cromwell as further collateral security, such insurance to be in a company to be approved by said Cromwell; and said premises may be bid off by and conveyed to a trustee to be appointed by said Cromwell. Out of the said proceeds shall be paid the interest which shall have accrued, having first paid out of said proceeds the costs of such sale, and the residue, if any should remain, to pay over to the parties of the first part."

Plaintiffs in error say that the court was not authorized to decree the sale of the premises and the payment of the debt out of the proceeds of such sale, because that portion of the mortgage just quoted does not provide for any such disposition of said proceeds; that, on the contrary, it clearly and distinctly requires that such proceeds shall be applied to the payment of the costs and expenses of the foreclosure, the accrued interest, and the residue paid to the plaintiffs in error. It is insisted with great earnestness that, although the intention of the parties to the mortgage may have been to provide for the payment of the principal of the debt out of the proceeds of the sale of the mortgaged property, as well as the interest, and that such provision was omitted by mistake of the person who wrote the instrument, yet, before such intention can be carried out, the instrument must be reformed. A large number of cases have been cited in support of this position. While agreeing fully with the principles enun-

ciated by these authorities, we fail to see their application here. If the mortgagee had attempted to execute the power of sale, and had after the sale undertaken to pay the principal of the debt out of the proceeds, a court of equity would, in all probability, have enjoined such payment until the instrument could be reformed to express the intention of the parties.

But no such question arises here. From an inspection of the mortgage, the mortgagee, it may be assumed, discovered the defect in the power of sale, and elected to abandon the power, and proceed in a court of equity for a foreclosure in the first instance. This he clearly had the right to do; and, after the court became possessed of the cause for the purpose of foreclosure, it had the power, and it was its duty, to go on and determine fully the rights of all the parties, and distribute the proceeds of the sale decreed in accordance therewith. This the court did, and, as we think, properly. It follows that this assignment of error is untenable, and the judgment should be affirmed. It is so ordered.

Long, C. J., and Henderson, J., concur.