The slip opinion is the first version of an opinion released by the Clerk of the Court of Appeals. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Clerk of the Court for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: June 12, 2025

**No. A-1-CA-41041**

**NEW MEXICO STATE LAND OFFICE, and STEPHANIE GARCIA RICHARD, Commissioner of Public Lands of the State of New Mexico,**

Plaintiffs/Counterdefendants/Appellees,

v.

**SIDDENS & DODSON, LLP and DOUGLAS SIDDENS,**

Defendants/Counterclaimants/
Third-Party Plaintiffs-Appellants,

and

**NICHOLAS KOLUNCICH, Records Custodian,**

Thirty-Party Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Maria Sanchez-Gagne, District Court Judge**

New Mexico State Land Office
Ari Biernoff, General Counsel
Richard Moore, Associate Counsel
Santa Fe, NM

for Appellees

Western Agriculture, Resource and
Business Advocates, LLP
A. Blair Dunn
Jared R. Vander Dussen
Albuquerque, NM

for Appellants

**OPINION**

**YOHALEM, Judge.**

{1}     This declaratory judgment action was filed in the district court by the Commissioner of Public Lands and the State Land Office (collectively, the SLO) following receipt of a tort claims notice from Douglas Siddens and Siddens & Dodson, LLP (collectively, Siddens). Siddens' tort claim notice informed the SLO of Siddens' intent to recover for damage to their residential property from a rockslide originating on the state trust land bordering the property. Siddens alleged the SLO was negligent in failing to remediate a known hazard. The SLO filed this declaratory judgment action, asking the district court to determine whether the Tort Claims Act (TCA), NMSA 1978, §§ 41-4-1 to -27, -30 (1976, amended 2020)[1], waived sovereign immunity for Siddens' negligence claim. Siddens counterclaimed, seeking damages for the SLO's negligence; claiming retaliation by the SLO, in violation of the New Mexico Civil Rights Act (CRA), NMSA 1978, §§ 41-4A-1 to -13 (2021); and seeking disclosure of material that Siddens claimed was improperly redacted from a memorandum produced in response to a request made pursuant to the Inspection of Public Records Act (IPRA), NMSA 1978, §§ 14-2-1 to -12 (1947, as amended through 2023). We affirm the district court's judgment declaring that the

---

[1]Section 41-4-30 was explicitly enacted as a "new section of the Tort Claims Act." 2010 N.M. Laws, ch. 22, § 1.

SLO is protected by sovereign immunity, dismissing Siddens' tort claim, dismissing Siddens' CRA counterclaim on the pleadings, and granting summary judgment to the SLO on Siddens' IPRA counterclaim.

**DISCUSSION**

**I.      The TCA Does Not Waive Sovereign Immunity Where the State Trust Land at Issue Is Not a "Public Park"**

{2}     The SLO sought summary judgment on Siddens' negligence claim, contending that the state is immune from Siddens' suit for negligence because (1) the state trust lands at issue are not a "public park" under Section 41-4-6(A) of the TCA, and no other waiver of immunity in the TCA applies to state trust land; and (2) the state is not liable in negligence under the TCA, § 41-4-2(B),[2] because there is no legal duty under the common law to prevent, remediate, or warn with regard to property damage caused by a natural condition on neighboring land.

{3}     The district court denied the SLO's motion for summary judgment on the first ground, concluding that there were disputed issues of material fact regarding Siddens' claim that the state trust land is a "public park." *See* § 41-4-6(A) (waiving immunity from liability "for damages . . . caused by the negligence of public employees while acting within the scope of their duties in the operation or

---

[2]Section 41-4-2(B) provides that "[l]iability for acts or omissions under the [TCA] shall be based upon the traditional tort concepts of duty and the reasonably prudent person's standard of care in performance of that duty."

maintenance of any building, *public park*, machinery, equipment or furnishings." (emphasis added)). The district court granted the SLO's alternative request for summary judgment, concluding that the state was not liable because it had no duty under the common law to protect neighboring land from a naturally occurring condition.

**A.    Undisputed Material Facts in the Summary Judgment Record**

{4}    The following facts in the summary judgment record are undisputed: Siddens delivered a tort claim notice to the SLO on May 6, 2021, alleging $600,000 in damage to a residential property in Alto, New Mexico, when "a rock cliff on state property broke loose and [twenty] plus boulders and much debris rolled down on the said property." Siddens' property is down slope from adjacent state trust lands owned by the state and managed by the SLO. Siddens' tort claim notice alleged negligence by the SLO because it had prior knowledge of the potential for a rockslide, and did nothing about it.

{5}    The state trust land at issue is among the millions of acres granted to the State during the territorial era. During all relevant times, the state trust lands were in their natural state. The loose rocks on the slope where the state trust land abuts the Siddens property are a naturally occurring condition. The SLO has not engaged in any construction or excavation on the slope or otherwise altered the natural state of the trust land in that area. The rockslide that rolled from the trust land onto Siddens'

property was caused by a natural condition existing on the trust lands and was not caused by any conduct or activity of any person or entity.

{6}     The trust land at issue was leased by the SLO for livestock grazing. Although not disagreeing that the land was leased for livestock grazing, Siddens disputes the SLO's statement that the land was leased "solely" for livestock grazing, pointing to an easement between the SLO and the New Mexico Department of Game and Fish (the Department) that allows the Department to issue hunting licenses on state trust land during limited times of the year,[3] and to recreational access permits issued by the SLO on some state trust lands. Siddens quotes a promotion allegedly found on an SLO website advertising the sale of such recreational permits. At no time did the State Parks Division of the New Mexico Department of Energy Minerals and Natural Resources, or any county or municipal body, exercise custody or control of the trust lands. The SLO has fifteen to twenty field offices with personnel who conduct field inspections when necessary, but no rangers or full or part-time employees on state trust lands.

---

[3] *See State of N.M Comm'r of Pub. Lands*, New Mexico State Game Commission Easement (January 26, 2021), www.nmstatelands.org/wp-content/uploads/2021/11/SLO-Game-Commission-Easement-2021-2025-FINAL-fully-executed.pdf.

**B.    The TCA's Waiver of Sovereign Immunity for the Operation and Maintenance of a "Public Park"**

{7}    On appeal, Siddens asserts that immunity was waived by Section 41-4-6(A) of the TCA because the state trust land at issue is a "public park." The SLO contends in direct opposition to Siddens' argument that the district court's grant of summary judgment should be affirmed on the ground that the state trust lands do not constitute a "public park" for TCA purposes. We review the grant or denial of a motion for summary judgment de novo. *See Romero v. Philip Morris Inc.*, 2010-NMSC-035, ¶ 7, 148 N.M. 713, 242 P.3d 280. When summary judgment depends on the interpretation of a statute, as it does here, we will also review the construction of the statute, which presents a question of law, de novo. *See Wilson v. Denver*, 1998-NMSC-016, ¶ 13, 125 N.M. 308, 961 P.2d 153.

{8}    Section 41-4-6(A) waives sovereign immunity and allows the state to be sued for damages "resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation or maintenance of any building, public park, machinery, equipment or furnishings."

{9}    In construing the TCA, we discern and give effect to the intent of the Legislature, as we do with other state statutes. *See Bell v. N.M. Interstate Stream Comm'n*, 1993-NMCA-164, ¶ 8, 117 N.M. 71, 868 P.2d 1296. In a recent opinion construing the TCA's waiver of sovereign immunity for damages caused by

negligence in the operation and maintenance of a building, our Supreme Court explained that it reads the TCA as it reads other statutes, "in a way that facilitates their operation and the achievement of their goals." *Sanders v. N.M. Corr. Dep't*, 2024-NMSC-027, ¶ 21, 562 P.3d 572 (internal quotation marks and citation omitted). When statutes are related by subject matter, we read them together and construe them as a harmonious whole. *See State v. Smith*, 2004-NMSC-032, ¶ 10, 136 N.M. 372, 98 P.3d 1022. Finally, where there is precedent in our appellate courts construing a statute, we rely on that precedent to assist us in determining legislative intent. *See State v. Moncayo*, 2022-NMCA-067, ¶ 13, 521 P.3d 120 (relying on the plain meaning, the history of the legislation, and "past precedent in the courts to assist in determining legislative intent").

{10}     In construing the TCA, we look first to the purpose of the statute as described by the Legislature in Section 41-4-2. In that section, the Legislature explains that the TCA is intended to balance fairly compensating those who are injured by the negligence of government employees, while recognizing that government functions are so broad that the government cannot be held liable for the full scope of tort liability that would be applied to an individual under the common law. *See* § 41-4-2. Our Supreme Court recently explained that the Legislature achieved the balance it sought in the TCA "by waiving sovereign immunity with respect to specific people and places which, *in the performance of certain governmental functions*, give rise to

traditional duties to the public." *Sanders*, 2024-NMSC-027, ¶ 15 (internal quotation marks and citation omitted).

{11}   As relevant in this case, this Court noted in *Noriega v. Stahmann Farms, Inc.*, in construing Section 41-4-6(A), that the Legislature did not adopt "a general waiver of immunity with respect to negligent maintenance of all public land." *Noriega*, 1992-NMCA-010, ¶ 8, 113 N.M. 441, 827 P.2d 156. The waiver as to negligence regarding public land in Section 41-4-6(A) is limited to the operation and maintenance of buildings and the property surrounding them, and to public parks. *See Noriega*, 1992-NMCA-010, ¶ 8. Negligence in the operation and maintenance of other types of public land is not subject to a waiver of immunity. *See id.*

{12}   The term "public park" is not defined in the TCA. *See* § 41-4-3 (providing definitions). However, NMSA 1978, Section 16-2-11 (2005) specifically addresses the creation, operation, and management of public parks, and we look to it for guidance. *See Bell*, 1993-NMCA-164, ¶ 10 (relying on Section 16-2-11 to interpret the "public park" waiver in Section 41-4-6); *see also Smith*, 2004-NMSC-032, ¶ 10 ("A statutory subsection may not be considered in a vacuum, but must be considered in reference . . . to statutes dealing with the same general subject matter." (alteration, internal quotation marks, and citation omitted)). Section 16-2-11(D) sets requirements for acquiring, operating and maintaining property as a public park. That section provides that "[l]ands that are acquired or developed as state parks or

state recreational areas shall be managed and developed according to the following objectives: (1) outdoor recreation shall be recognized as the dominant or primary resources management objective." *Id.* Further, Section 16-2-11(D)(2)-(5) requires physical development of facilities to serve visitors and "to enhance and promote the enjoyment of the recreational resources in the area," § 16-2-11(D)(2), including the installation of landscaping and the stabilization of historic structures within the park. *See* § 16-2-11(D)(3), (5).

{13}     In *Bell*, this Court relied on evidence that Ute Lake (where the plaintiff was injured) was "used only for swimming, diving, boating, fishing, and other recreational activities"; that facilities were provided for public use while visiting the lake, including trails, shelters, and picnic areas; and that the park was actively used by the public for purposes of recreation, to conclude that Ute Lake was part of a "public park," as that term is used in both Section 16-2-11 and in Section 41-4-6(A) of the TCA. 1993-NMCA-164, ¶ 10.

**C.     No Genuine Issue of Material Fact Precludes Summary Judgment**

{14}     The SLO argues that the undisputed facts in the record establish that the state trust land at issue is undeveloped land that is not operated or maintained by the SLO as a public park. Siddens contends, however, that the district court correctly determined that there was a genuine issue of material fact for trial as to whether the land was a public park, subject to Section 41-4-6(A)'s exception to sovereign

immunity. We agree with the SLO that Siddens has not introduced evidence into the summary judgment record that is capable of supporting a reasonable inference that the state trust land at issue is operated or maintained as a "public park," under Section 41-4-6(A) of the TCA. *See Romero*, 2010-NMSC-035, ¶ 10 ("When disputed facts do not support reasonable inferences, they cannot serve as a basis for denying summary judgment.").

{15}    When reviewing a district court's grant or denial of summary judgment, we "review the whole record in the light most favorable to the party opposing summary judgment to determine if there is any evidence that places a genuine issue of material fact in dispute." *HSBC Bank USA v. Wiles*, 2020-NMCA-035, ¶ 8, 468 P.3d 922 (internal quotation marks and citation omitted). "A summary judgment movant bears the initial burden of establishing a prima facie case for summary judgment." *Fed. Nat'l Mortg. Ass'n v. Trissell*, 2022-NMCA-001, ¶ 6, 503 P.3d 381 (internal quotation marks and citation omitted). "A movant establishes a prima facie case when the motion is supported by such evidence as is sufficient in law to raise a presumption of fact or establish the fact in question unless rebutted." *Id.* (internal quotation marks and citation omitted). "Upon the movant making a prima facie showing, the burden shifts to the party opposing the motion to demonstrate the existence of specific evidentiary facts which would require trial on the merits." *Bank*

*of N.Y. Mellon v. Lopes*, 2014-NMCA-097, ¶ 6, 336 P.3d 443 (internal quotation marks and citation omitted).

{16} Reviewing the undisputed facts presented by the SLO, we conclude that the SLO established a prima facie case that the state trust land at issue is not operated or maintained as a public park. The undisputed facts show that the state trust land at issue was acquired through the original territorial-era land grants for the primary purpose of funding public education. The state trust land at issue has been leased by the SLO for livestock grazing at all relevant times. Furthermore, the lands have been left in their natural state, the SLO does not staff state trust land for the operation or maintenance of public services or public facilities, and regional field operation personnel are available for field inspections only on an as-needed basis. *See* § 16-2-11(D)(2)-(5). Any use for hunting, if it occurs at all, is incidental to the primary use of the land for grazing.

{17} We conclude that these undisputed facts, each supported by evidence in the record, establish a prima facie case that the state trust lands at issue were not a public park under Section 41-4-6(A). The SLO's evidence establishes that the state trust land at issue has not been managed, developed, or maintained with outdoor recreation "as the dominant or primary resources management objective." Section 16-2-11(D)(1).

**{18}** Once the SLO has established a prima facie case, the burden shifts to Siddens to introduce evidence into the summary judgment record, which puts a material fact in dispute. *See Romero*, 2010-NMSC-035, ¶ 10. Evidence "is material if the existence (or non[]existence) of the fact is of consequence under the substantive rules of law governing the parties dispute." *Martin v. Franklin Cap. Corp.*, 2008-NMCA-152, ¶ 6, 145 N.M. 179, 195 P.3d 24. "A fact is material for the purpose of determining whether a motion for summary judgment is meritorious if it will affect the outcome of the case." *Parker v. E.I. Du Pont de Nemours & Co.*, 1995-NMCA-086, ¶ 9, 121 N.M. 120, 909 P.2d 1.

**{19}** Siddens, in their summary judgment response, disputed the SLO's assertion that the state trust land at issue was "*solely* leased for grazing," citing the hunting easement and the recreational permits. The SLO acknowledged that the agency issues permits for access to state trust lands, and has also entered into a hunting easement with the Department that allows the Department to issue permits to licensed hunters to hunt on state trust land during hunting season. Siddens, however, provides no evidence indicating that the particular state lands at issue were ever used for recreational or hunting purposes. The sole evidence Siddens offered, beyond what was introduced by the SLO concerning the easement and the permits, is a citation to a defunct SLO website that promoted the recreational permits for visits to state trust lands.

{20} We do not agree with the district court that recreational permits that are available on state trust lands generally—along with Siddens' unsupported speculation that these particular state trust lands are used for that purpose despite their primary use for grazing—raises a legitimate question for trial as to whether the state trust land at issue is operated and maintained as a public park. The mere fact that the SLO issues permits for recreation on *some* state trust land is not sufficient to support a reasonable inference that this admittedly unstaffed and undeveloped state trust land, leased for grazing, is operated or maintained as a "public park" as that term is intended by the TCA. *Bell* makes clear that recreation must be the *primary* purpose of state-owned land for the land to qualify as a "public park." 1993-NMCA-164, ¶ 10 (relying on Section 16-2-11 to interpret the "public park" waiver in Section 41-4-6). The description in *Bell* of a park as an area broadly open to the public, developed with parking, facilities, and staffing to accommodate visitors, is a far cry from the undeveloped, unstaffed land used for grazing at issue here. *See id.* No genuine issue of material fact exists as to whether this state trust land is a "public park".

{21} Having decided that the state trust land at issue in this case is not a "public park" and, therefore, that the TCA does not waive sovereign immunity, we conclude that the district court lacked subject matter jurisdiction over Siddens' counterclaim for damages in tort. *See Ramirez v. Child., Youth & Fams. Dep't*, 2016-NMSC-016,

¶ 11, 372 P.3d 497 ("When the [s]tate moves to dismiss a plaintiff's claim by raising the affirmative defense of sovereign immunity invoking the lack of subject matter jurisdiction, the district court must rule on that motion before allowing the claim to proceed."); *Pemberton v. Cordova*, 1987-NMCA-020, ¶ 6, 105 N.M. 476, 734 P.2d 254 ("If no specific waiver of immunity can be found in the [TCA], [the] complaint must be dismissed as to the governmental defendant."), *abrogated on other grounds as recognized by Williams v. Cent. Consol. Sch. Dist.*, 1998-NMCA-006, 124 N.M. 488, 952 P.2d 978. We therefore need not address the district court's grant of summary judgment to the SLO based on immunity from liability under traditional tort concepts.

**II.    Summary Judgment on Siddens' IPRA Claim Was Properly Granted**

**A.    Background**

{22}    On October 22, 2021, Siddens filed an IPRA request with the SLO seeking documents pertaining to a 2004 rockslide from state trust land onto the property later purchased by Siddens. The SLO's custodian of public records timely produced a memorandum describing the SLO's field investigation into the damage caused by the 2004 rockslide. The SLO redacted three lines of the memorandum it produced, invoking attorney-client privilege.

{23}    In the instant suit, Siddens filed an IPRA counterclaim against the SLO's records custodian seeking disclosure of the three redacted lines. The SLO moved for

partial summary judgment on Siddens' IPRA claim, submitting a sworn declaration of SLO employee Mark Naranjo, the employee who had conducted the 2004 investigation and drafted the redacted memorandum. Naranjo's declaration states that the memorandum "constituted a private communication between me and my supervisors in the sense that I sent it only to them, intended it only for them, and did not intend any further distribution or disclosure." The declaration states that the redacted portion was included in the memorandum "for the purpose of facilitating legal advice to be provided by the [SLO] legal division to the Commissioner of Public Lands and/or others managing the [SLO]."

{24}     Siddens responded to the SLO's motion for summary judgment arguing that facts were in dispute concerning (1) whether Naranjo was "a representative of the client," as that term is used in Rule 11-503(B)(4) NMRA, who is authorized to enter into a confidential communication protected by attorney-client privilege; and (2) whether Naranjo's sworn statement—that the redacted portion of the memorandum was confidential and for the purpose of facilitating legal advice—should be accepted as true without in camera review. Siddens did not introduce any supporting affidavits or documents.

{25}     The SLO argued in reply that (1) the Naranjo memorandum and declaration established a prima facie case that the redaction was subject to attorney-client privilege; (2) Siddens had failed to rebut that case with admissible evidence; and (3)

summary judgment should, therefore, be granted. The district court agreed with the SLO, concluding that the SLO had made out a prima facie case of attorney-client privilege, supported by evidence in the summary judgment record, and that Siddens had failed to raise a dispute of fact requiring resolution by in camera review. For the reasons that follow, we affirm.

**B.      Standard of Review**

{26}     We review the district court's decision to grant the SLO's motion for partial summary judgment de novo. *See Romero*, 2010-NMSC-035, ¶ 7. "[W]e also review the application of a privilege de novo." *Energy Pol'y Advocs. v. Balderas*, 2024-NMCA-081, ¶ 13, 560 P.3d 37. We look to the "substantive rules of the law governing the parties' dispute"—here the rules of privilege under IPRA—to determine if the SLO established sufficient facts to meet its burden under the summary judgment standard. *See id.* ¶ 25.

**C.      The SLO's Prima Facie Showing That the Redaction Is Privileged Was Not Rebutted, Making in Camera Review Unnecessary**

{27}     Under IPRA, "[e]very person has a right to inspect public records of this state" except as provided by the Legislature in the listed exceptions to IPRA. Section 14-2-1. Section 14-2-1(G) specifically exempts communications subject to attorney-client privilege from disclosure. "Our Supreme Court has made clear that Rule 11-503 . . . is the substantive law governing the application of [the attorney-client privilege] exception to IPRA." *Energy Pol'y Advocs.*, 2024-NMCA-081, ¶ 27. The

elements of attorney-client privilege under Rule 11-503 are: "(1) a communication (2) made in confidence (3) between privileged persons (4) for the purpose of facilitating the attorney's rendition of professional legal services to the client." *Santa Fe Pac. Gold Corp. v. United Nuclear Corp.*, 2007-NMCA-133, ¶ 14, 143 N.M. 215, 175 P.3d 309.

{28} Siddens questions on appeal whether the SLO employee (Naranjo) who drafted the memorandum at issue qualifies as a "privileged person" whose request for legal advice on behalf of an agency was protected, even though the request was not made directly to counsel. In *Henry v. New Mexico Livestock Board*, 2023-NMCA-082, ¶ 17, 538 P.3d 102, this Court addressed this very question. We observed that the communication of information from government agency employees "needed to supply a basis for legal advice" is privileged. *Id.* ¶ 25 (internal quotation marks and citation omitted). The communication need not be made directly to a lawyer if it is a "communication" made to a "representative[] of the client," *see* Rule 11-503(B)(4), "so long as the communication—the document, conversation, e-mail, or memorandum—is made for the purpose of facilitating the rendition of professional legal services to the client." *Henry*, 2023-NMCA-082, ¶ 17.

{29} In this case, Naranjo, the SLO field employee charged with conducting the 2004 investigation of damage to the private property adjoining state trust land on the SLO's behalf, wrote a memorandum to SLO management describing his findings.

The purpose of the memorandum, according to Naranjo, was to supply a basis for legal advice from the agency's general counsel. This fits squarely within the attorney-client privilege described by *Henry. See id.*

{30}    Siddens offers in response only generalized suspicion that Naranjo is not being truthful in his sworn declaration. New Mexico law does not require the district court to conduct an in camera review of documents sought under IPRA when attorney-client privilege is claimed. District courts assess privilege under IPRA by applying the procedures set out in discovery Rule 1-026(B)(7) NMRA. *See Energy Pol'y Advocs.*, 2024-NMCA-081, ¶ 33. Under Rule 1-026(B)(7), a party seeking to withhold confidential attorney-client communications must "'make the claim expressly and shall describe the nature of the documents, communications or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.'" *Energy Pol'y Advocs.*, 2024-NMCA-081, ¶ 31 (quoting Rule 1-026(B)(7)(a)).

{31}    The disclosure of all but three lines of the memorandum at issue here, including the sender's name, the date, the recipients, and the subject matter, together with the sworn declaration of the employee who drafted that memorandum, provided sufficient information to allow the district court to assess the assertion of the privilege without reviewing the redaction in camera. Siddens did not offer a concrete

basis to impugn the integrity of the declarant. We therefore affirm the district court's grant of summary judgment to the SLO on Siddens' IPRA claim.

**III.    The SLO's Declaratory Judgment Action Did Not Violate the CRA**

{32}    Siddens' final argument is that the SLO violated the CRA by filing its complaint for declaratory judgment in retaliation for Siddens' filing a tort claim notice and an IPRA request—conduct that Siddens claims is protected by Article II, Sections 17 and 18 of the New Mexico Constitution. The district court granted the SLO's motion to dismiss Siddens' CRA claim on the pleadings, pursuant to Rule 1-012(C) NMRA. We affirm.

**A.    Standard of Review**

{33}    In reviewing the district court's grant of judgment on the pleadings, this Court accepts as true the facts pleaded, and reviews de novo the district court's application of the law to those facts. *See Guzman v. Laguna Dev. Corp.*, 2009-NMCA-116, ¶ 16, 147 N.M. 244, 219 P.3d 12.

**B.    Application of the Pleaded Facts to the Law**

{34}    Both parties rely on the United States Court of Appeals for the Tenth Circuit's test for a First Amendment retaliation claim under the United States Constitution, found in *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007). In the absence of any argument on the federal First Amendment standard or why the law under the New Mexico Constitution differs, we apply the federal First Amendment law as

articulated by the Tenth Circuit in *Shero*. *See State v. Gomez*, 1997-NMSC-006, ¶ 22, 122 N.M. 777, 932 P.2d 1 (stating that a party must preserve claim that New Mexico Constitution differs from, or provides more protection than, the federal constitution).

**{35}** Under Tenth Circuit precedent, government retaliation against a plaintiff for exercising their First Amendment rights is shown by proving the following elements:

> (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Shero*, 510 F.3d at 1203. The Tenth Circuit further explained the standard for evaluating the chilling effect on speech, the second element of the *Shero* test as follows: "When the plaintiff alleges that the defendant's action was taken in retaliation for protected speech, our standard for evaluating that chilling effect on speech is objective, rather than subjective[:] a trivial or de minimis injury will not support a retaliatory prosecution claim." *Id.* (alteration, omission, internal quotation marks, and citation omitted). We examine Siddens' counterclaim for facts supporting each element that a claimant must prove at trial, accepting well-pleaded facts as true. *See Guzman*, 2009-NMCA-116, ¶ 16.

**{36}** Siddens alleges that the filing of a tort claim notice and seeking information from the government under IPRA were both protected First Amendment activity—

the first prong of the *Shero* test. Because Siddens' retaliation claim fails under the second and third prongs, we assume, without deciding, that the tort claim notice and IPRA request is activity entitled to constitutional protection.

{37} Siddens contests the district court's decision on the two remaining prongs of the *Shero* test. Siddens claims that the answer and counterclaim together state or adopt facts sufficient to establish that the SLO's filing of its declaratory judgment action "would chill a person of ordinary firmness from continuing to engage in [the protected] activity," and that the SLO's declaratory judgment action was substantially motivated by retaliation against Siddens' tort claim notice and IPRA request. The "adverse action" Siddens alleges that the SLO took in retaliation for the exercise of First Amendment rights was the SLO's filing of a declaratory judgment action, and the inclusion of a request for attorney fees in its prayer for relief. Siddens alleged that the SLO's declaratory judgment complaint, seeking a district court decision on sovereign immunity under the TCA, is a vindictive prosecution that seeks to deprive Siddens of property and liberty "[i]n retaliation for the protected exercise of speech and petitioning."

{38} The following facts, pleaded by the SLO in its declaratory judgment action, were accepted as undisputed by Siddens in the answer to the complaint. Siddens agreed that the tort claim notice, in relevant part, claimed that

> a 3200 [square foot] 4 bedroom, 3 bath home, 2 car garage, on 2 acres
> is now unusable, uninsurable and un-sellable due to future rockslide

potential. The State of New Mexico has had prior knowledge of this potential and did nothing about it.

Siddens agreed as well with the SLO's description of the tort claim notice as having communicated a "clearly stated intent to seek damages from the [SLO]" in the amount of $600,000. Siddens' answer admits that after filing the tort claim notice, they complained in a letter to the SLO on November 19, 2021, that "[Siddens'] constitutional rights [were] being violated," and that the letter put the SLO on notice that there had been additional damage to the property, asserting "THIS is on YOU." Finally, Siddens agreed that there was an actual controversy with the SLO as to whether the SLO was immune from suit under the TCA, and therefore the issue was properly before the district court. *See* NMSA 1978, § 44-6-2 (1975) (providing that a district court only has jurisdiction to issue a declaratory judgment "[i]n cases of actual controversy").

{39}    We agree with the district court that these pleaded facts fail to state a claim for retaliation by the SLO for Siddens' protected speech and exercise of the right to petition the government. The facts asserted, when accepted as true, do not support either that the SLO's filing of a declaratory judgment action caused Siddens to suffer an injury that would chill a person of ordinary firmness from continuing to engage in pursuing a $600,000 tort claim, or that the filing of the declaratory judgment action was substantially motivated by a desire to retaliate for Siddens' tort claim notice or IPRA request. *See Shero*, 510 F.3d at 1204 (providing that "being properly

named as a defendant in a declaratory judgment suit, however styled, would not chill a person of ordinary firmness from continuing to engage in constitutionally protected activity"); *see also id.* ("The nature and purpose of a declaratory judgment is to declare rights, not to attack the opposing party." (internal quotation marks and citation omitted)).

**{40}** To bolster the retaliation claim, Siddens argues on appeal (as in district court) that the inclusion of a request for attorney fees in the complaint's prayer for relief caused injury and shows retaliatory intent. We are not persuaded by Siddens' argument that a boilerplate request for attorney fees in this complaint's prayer for relief caused injury that would deter a normal person from filing a claim for $600,000 in damages. Nor do we agree that a prayer for relief that was never pursued evinces a retaliatory intent. *See id.* at 1203-04; *see also Hall v. City of Carlsbad*, 2023-NMCA-042, ¶ 5, 531 P.3d 642 (providing that, "[o]n appeal, there is a presumption of correctness in the rulings and decisions of the district court," and thus "it is the appellant's burden to persuade us that the district court erred" (internal quotation marks and citation omitted)); *Lee v. Lee* (*In re Adoption of Doe*), 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 ("We assume where arguments in briefs are unsupported by cited authority, counsel after diligent search, was unable to find any supporting authority. . . . Issues raised in appellate briefs which are unsupported by cited authority will not be reviewed by us on appeal."). As our

Supreme Court has stated in *Lett v. Westland Development Co.*, "a prayer for relief . . . forms no part of the pleader's cause of action." 1991-NMSC-069, ¶ 6, 112 N.M. 327, 815 P.2d 623. Regardless of what is stated in the prayer for relief, the district court is charged with awarding the relief that the prevailing party "is entitled to under the facts pleaded and proved at trial." *Id.* Given this legal standard, and in the absence of persuasive argument and authority from Siddens, we cannot conclude that the mere inclusion of a request for fees in the SLO's complaint's prayer for relief, without any supporting cause of action in the complaint, caused Siddens to suffer "an injury that would chill a person of ordinary firmness from continuing to engage" in the protected activity or was substantially motivated by retaliation against Siddens' tort claim notice and IPRA request. *See Shero*, 510 F.3d at 1203-04.

{41}    Because Siddens has failed to state a claim for retaliation for the exercise of the right to petition the government or to engage in protected speech, we affirm the district court's decision to dismiss the retaliation claim on the pleadings.

**CONCLUSION**

{42}    Not persuaded by Siddens' arguments, we affirm the district court.

{43}    **IT IS SO ORDERED.**

_____
**JANE B. YOHALEM, Judge**

**WE CONCUR:**

_____
**JENNIFER L. ATTREP, Judge**

_____
**GERALD E. BACA, Judge**